The State of Missouri ex rel. R. D. Reed et al., Relators and Appellant, v. H. C. Garrett et al., Respondents,

St. Louis Court of Appeals, October 18, 1898.

County Seat Removal: MANDAMUS: SECTION 3136, REVISED STATUTES OF MISSOURI CONSTRUED. When a proper petition is presented to the county court praying for a removal of the seat of justice of such county, and an order of election made, it was the intention of the law that the particular proposition of removal should stand or fall on its own merits. To allow rival towns or locations to have submitted, at the same time, another proposition of removal, would have the effect of dividing the vote, thus making it impossible in many cases for the people to rid themselves of an undesirable seat of justice, and thereby defeating the object of the statute.

*Appeal from the Pemiscot Circuit Court.*—Hon. Henry C. Riley, Judge.

Affirmed.

Wilson Cramer for appellant.

The only question presented by this appeal is whether, under the statute relating to the removal of county seats, two designated places may be voted for at the same election. An order was made by the county court, submitting the proposition of the removal of the seat of justice of Pemiscot county from Gayoso to the city of Caruthersville, but the court

refused to make a like order in favor of the town of Hayti, although a petition in that behalf was presented, signed by one fourth of the voters of the county, as required by statute, hence this mandamus proceeding. The sufficiency of the Hayti petition is not disputed; it contained the names of one fourth of the voters of the county, and the county court so found, as shown by its record. In dealing with the matter of the removal of county seats county courts act ministerially as agents of the county—not judicially, and mandamus will lie. State ex rel. West v. Clark Co. Ct., 41 Mo. 44 (49); St. L., I. M. & S. R'y v. St. Louis, 92 Mo. 160 (165); State ex rel. v. Elkins, 130 Mo. 90 (104). Relators' motion to strike out and for peremptory writ should have been sustained. The return is insufficient. The only excuse set up by respondents for not complying with the alternative writ is the previous order of the county court, submitting the proposition to remove the seat of justice from Gayoso to Caruthersville. The statute is mandatory, leaving nothing to the discretion of the county court, and upon finding that the Hayti petition contained the names of one fourth of the voters of the county the court should have made the order asked for. Section 3136 provides: "Whenever one fourth of the voters of any county shall petition the county court for a removal of the seat of justice of such county to any other designated place, the court shall make an order directing that the proposition to remove such seat of justice to the place named in the petition be submitted to the qualified voters of the county at the next general election to be held therein," etc. Prior to the statute of 1865 a petition asking for the removal of a seat of justice had to be signed by three fifths of the taxable inhabitants of the county, necessarily precluding the possibility of a second petition at the same time; while by the statute of 1865 only one fourth of

the voters is required, in itself a significant change
bearing on the question at issue. From 1825 to the
revision of 1865 the statute relating to the removal of
county seats remained practically unchanged, and
provided: "That whenever three fifths of the taxable
inhabitants of any county (to be ascertained by the
tax list made and returned last preceding the applica-
tion) shall petition the tribunal transacting county
business in such county, praying a removal of the seat
of justice thereof to a place to be designated in said
petition, the said tribunal shall appoint five respectable
and competent persons to be commissioners for selecting
a site whereon to locate the seat of justice." Statutes
1825, p. 252, sec. 1; statute 1835, p. 144, sec. 1;
statute 1845, p. 301, sec. 1; statute 1855, Vol. 1, p.
514, sec. 1. By the statute of 1865 a radical change is
made, which has been carried forward in the several
subsequent revisions. It says (page 221, sec. 20):
whenever one fourth of the voters of any county
shall petition the county court for a removal of the
seat of justice of such county to any other designated
place, the court shall make an order directing that the
proposition to remove such seat of justice to the place
named in the petition be submitted to the qualified
voters of the county at the next general election to
be held therein," etc., G. S. 1865, p. 221, sec. 20;
W. S. 1872, p. 405, sec. 20; R. S. 1879, p. 1054, sec.
5339; R. S. 1889, p. 797, sec. 3136. By this statute
the question of removal and the selection of a place
are both submitted to a vote in the first instance. If
it appears by the election that two thirds of the legal
voters of the county are in favor of the removal of the
county seat, then the county court appoints five com-
missioners "to select a site whereon to locate the seat
of justice," and they are required to "select the most
suitable place in said county, within one mile of the place

designated in the petition, whereon to erect the public buildings.'' G. S. 1865, p. 223, secs. 22 and 26; 1 W. S. 1872, p. 405, secs. 22 and 26; 2 R. S. 1879, p. 1054, secs. 5341 and 5345; 1 R. S. 1889, p. 797, secs. 3138 and 3142. The submission of more than one proposition at the same election is not prohibited by law, and no good reason can be assigned why the right accorded the one fourth of the voters who named Caruthersville as their choice should be denied another one fourth of the voters favoring Hayti. To refuse to submit the proposition to remove the seat of justice to Hayti is to disfranchise the one fourth of the voters applying therefor.   *   *   *   State ex rel. McClenny v. Commissioners of Baker Co., 22 Fla. Rep. 29 (32).

C. B. FARIS for respondent.

The alleged service of the alternative writ of mandamus, by the sheriff, on the respondents, was fatally defective. 14 Am. and Eng. Ency. of Law [1 Ed.], 229, and cases cited; St. Louis Co. v. Sparks, 10 Mo. 117. The question of want of jurisdiction may be raised at any stage of the proceedings. State v. Lawrence, 45 Mo. 492; Lindell v. R. R., 36 Mo. 543. Section 3136, Revised Statutes of Missouri of 1889, is not mandatory in the sense that a county court shall make orders submitting to the qualified voters of a county a second, a third, or a fourth proposition of the removal of the seat of justice, from the place where located, when the court has already made one order submitting such proposition of removal. The first proposition must be first disposed of, either by being withdrawn, or by the holding of an election thereunder. Streissguth v. Geib, 69 N. W. Rep. (Minn.) 1097. It is conceded by the appellants that the statutes in force from 1825 to 1865, or until the enactment of the statute of 1865,

"necessarily precluded the possibility of a second petition at the same time." That this is true there can be no doubt. But the several sections of the statutes, with relation to this question, are in many cases identical, and are contradictory and irreconcilable with this contention, and with each other, in the light of this contention. Section 3136, and the corresponding section in all of the statutes, begin with the adverb "whenever." Has this word a different meaning now from that which it had in 1835? Webst. Dict., Ed. 1828; Webst. Dict., Ed. 1864; R. S. 1889, sec. 3136; R. S. 1855, sec. 1, p. 514; R. S. 1855, secs. 6, 7 and 8, p. 515; R. S. 1889, secs. 3139, 3140, 3141 and 3142. The statute of 1865, which is yet in force, is not a radical change from the statute in effect prior to the enacment of the statute of 1865. The statute of 1835–1865 required a petition of three fifths of the taxable inhabitants (not necessarily voters, nor even persons of the masculine sex) in order to confer authority on the county court to appoint commissioners to select a site. * * * R. S. 1855, sec. 1, p. 514 *et seq.;* R. S. 1889, sec. 3142. The points of difference between the statutes in force, prior to 1865, and the statute now in force, are not radical, vitally different, nor irreconcilable. Comparing the statute of 1855 with that of 1889, it will be seen that: (a) The statute of 1855 required a petition of three fifths of the taxable inhabitants in order to confer authority on the county court to act. The statute now in force requires one fourth of the qualified voters to so petition. (b) The statute of 1855 required the appointment of commissioners before the election was held. The statute now in force permits the voters to say whether a removal of the seat of justice to the place designated in the petition shall be had before the expense of appointing commissioners is incurred.

(c) The statute of 1855 required the concurrence of a majority of the taxable inhabitants owning land, and householders, to vote in favor of removal, before a removal could be had. The statute now in force requires the concurrence of two thirds of the qualified voters. (d) The statute of 1855 made the proposition of removal difficult of inception, but easy of execution. The statute of 1855 was suited to a sparsely inhabited region. The present statute to a denser population and more stable institutions. In the construction of a statute, all parts of the same statute must be taken and construed together. St. Joseph v. Porter, 29 Mo. App. 605; St. Joseph v. Landis, 54 Mo. App. 315; Pitts v. Bishop, 53 Mo. App. 600; Ruggles v. Washington Co., 3 Mo. 496; State v. Weigle, 48 Mo. 29. It is a presumption of law that the legislature does not intend to change or modify the law beyond what it explicitly declares, either in express terms or by unmistakable implication. 23 Am. and Eng. Ency. of Law [1 Ed.], and cases cited. It is a presumption of law that the legislature does not intend to enact a law which is unreasonable or absurd in its provisions; when a literal construction produces unreason, or absurdity, the spirit of the law will prevail over the letter. Neenan v. Smith, 50 Mo. 525; St. Joseph v. Landis, 54 Mo. App. 315; R. S. 1889, sec 3136; R. S. 1889, sec. 3138; R. S. 1889, sec. 3142. The submission of more than one proposition at the same time is not expressly prohibited by the statute; but it is prohibited by the fact that such submission of more than one such proposition at the same time, would make other parts of the statute unreasonable, nonsensical, absurd and meaningless. Compare section 3136, Revised Statutes 1889, with section 3138, Revised Statutes 1889, and section 3142, Revised Statutes 1889. The construction of sections 3138 and 3142, Revised Statutes 1889, in the

light of the contention of the appellants, would put the selection of a new site for a county seat wholly and absolutely in the hands of the county court, which by a judicious selection of commissioners favorable to a given place, could (if two thirds of the voters voted for removal from Gayoso) locate it either at the city of Caruthersville, or the town of Hayti, according to the personal wishes of the commissioners. Revised Statutes 1889, secs. 3138 and 3142. * * *

BIGGS, J.—The relators seek in this action of mandamus to compel the respondents, as justices of the county court of Pemiscot county, to make an order submitting to the voters of the county a proposition to remove the seat of justice of the county from the town of Gayoso to the town of Hayti. It was averred by the relators that on the fifth day of July, 1898, a petition, signed by one fourth of the qualified voters of Pemiscot county and asking for the submission of the question of said removal, was presented to the county court of the county, and that the respondents as justices thereof refused to make the order.

In answer to the alternative writ the respondents admitted that the petition for the removal was presented to them as alleged; that it contained the signatures of the requisite number of voters of the county, and that they refused to make the order submitting the question of the proposed removal to the voters of the county. They assigned as a reason for their action that prior to the presentation of this petition, to wit, at the May term, 1898, of the county court, a like petition had been presented to the court asking for the submission to the voters of the county a proposition to remove the seat of justice of the county from the town of Gayoso to the city of Caruthersville; that this petition was signed by one fourth of the voters of the

county, and that in compliance therewith the respondents as justices aforesaid, by an order entered of record, directed the submission of this proposition of removal to the voters of the county at the next general election to be held on the eighth day of November, 1898, and that having made said order as they were in duty bound to do, they considered their jurisdiction in the premises exhausted, and that they possessed no authority under the law to submit a second proposition of removal to be voted on at the same election.

The circuit court refused, on motion of relators, to strike out the return as offering no legal excuse for disobeying the commands of the alternative writ, and thereupon the matter being submitted on the pleadings, the court refused to issue a peremptory writ of mandamus, and dismissed the proceedings. The relators have appealed.

The sole question for decision is whether the statute governing the removal or change of county sites authorizes the submission of two propositions of removal at the same election. Section 3136 of the Revised Statutes of 1889 reads: "Whenever one fourth of the voters of any county shall petition the county court for a removal of the seat of justice of such county to any other designated place, the court shall make an order directing that the proposition to remove such seat of justice to the place named in the petition be submitted to the qualified voters of the county at the next general election to be held therein, and shall also order that public notice be given of such proposed removal by publication thereof in some newspaper printed in the English language in said county, if any such there shall be, and also by directing the sheriff of said county to put up, in hand-bill form, printed copies of such order, in not less than three of the most public places in each township in said county, not less than

thirty days before the election at which such proposition is to be voted upon, all of which notices shall be published and continued, so far as the circumstances will permit, up to the day of such election." It must be admitted that as to the question under discussion the statute is ambiguous. Prior to the revision of 1865, the corresponding section to the one quoted, provided that an order for the removal of the seat of justice of a county could only be made upon the petition of *three fifths* of the taxable inhabitants of the county. This requirement necessarily prevented the submission of more than one proposition of removal at the same election, for the obvious reason that two petitions containing the requisite number of signers could not be obtained. In 1865 the section was amended so as to require the signatures of *one fourth of the voters* of the county, thus making it possible to secure the requisite number of signers to two or more petitions. Therefore as to the question involved the amended statute becomes doubtful and ambiguous, and in construing it resort must be had to the rules which govern in the construction of doubtful or ambiguous statutes. The object of all statutory construction is to get at the true meaning or intention of the legislature, and that meaning should be adopted which accords best with the general purpose of the act.

The general rules for determining this from ambiguous statutes are that a construction "which must necessarily occasion great public and private mischief must never be preferred to a construction which will occasion neither, or not in so great a degree, unless the terms of the instrument absolutely require such preference. Of two constructions, either of which is warranted by the words of the amendment of a public act, that is to be preferred which best harmonizes the amendment with the general tenor and spirit of the

act amended.    A statute may be construed contrary to its literal meaning, when a literal construction would result in an absurdity or inconsistency, and the words are susceptible of another construction which will carry out the manifest intention." Sutherland on Statutory Construction, section 323.    That the power (under certain restrictions) to remove a county site ought to be vested in the people of the county is obvious.    Our state is comparatively new, and conditions change rapidly.    An established seat of justice may have been the most convenient and accessible twenty years ago, but on account of changed conditions it may have to-day become so undesirable as a county site as to make the selection of a new location almost a public necessity.    With this in view the statute was enacted.    In order that there might not be unnecessary or groundless agitations of such questions, the law required one fourth of the voters of the county to favor a certain change of location before an election could be held.    The fact that so many citizens sign such a petition was considered by the legislature to warrant the inference that the objections to the established seat of justice were not without foundation, and that the proposed new location would be more suitable.

When such a petition is presented and the order of election made, we think that it was the intention of the law that the particular proposition of removal should stand or fall on its own merits.    To allow rival towns or locations to have submitted, at the same time, another proposition of removal, would have the effect of dividing the vote, thus making it impossible, in many cases, for the people to rid themselves of an undesirable seat of justice, and thereby defeating the object of the statute.    As stated by Mr. Sutherland, a construction of a statute which will occasion public mischief or inconvenience ought to be avoided, unless

the language employed will not permit of a different interpretation.

With the concurrence of the other judges the judgment of the circuit court will be affirmed. It is so ordered.