(October 24, 1912.)

## J. A. LIPPINCOTT et al., Respondents, *v.* W. A. CARPENTER, Appellant.

[127 Pac. 557.]

REMOVAL OF COUNTY SEAT—STATUTORY AND CONSTITUTIONAL CONSTRUCTION—RULE OF EVIDENCE—PETITION—RIGHT TO WITHDRAW NAMES.

(Syllabus by the court.)

1. Under the provisions of sec. 2, art. 18 of the constitution of Idaho, the petition for a removal of a county seat must be signed by a majority of the qualified electors of the county at the time the petition is filed.

2. By the provisions of sec. 467, Rev. Codes, a petition for a removal of a county seat must be signed by a number of legal voters of such county equal in number to a majority of all votes cast at the last general election, and that provision of the law provides a rule of evidence for establishing a *prima facie* case, and the court upon that showing would be justified in ordering an election, unless it was shown to the court that the number of qualified electors in the county had increased since the last general election, and in that case the petition must contain a majority of the qualified voters as

shown by the legal evidence produced on the hearing of such petition.

3. Under the provisions of the constitution and statute, more than one application may be made for an order of election for the removal of a county seat, and upon the hearing it is the duty of the court to consider all of such petitions at the same hearing and to determine which, if either, contains a majority of the qualified electors of the county.

4. Withdrawals from the petition for the removal of a county seat may be made at any time prior to the submission of the petition to the court.

APPEAL from the District Court of the Third Judicial District for Boise County. Hon. C. P. McCarthy, Judge.

Appeal from an order of the district court ordering an election for the removal of the county seat of Boise county from Idaho City to Weaverly. Judgment ordering an election. *Reversed.*

Cavanah, Blake & MacLane, for Appellant.

A requirement of a majority of the electors in favor of a petition contemplates that there can be but one petition. (*Streissguth v. Geib,* 67 Minn. 360, 69 N. W. 1097; *Evenson v. O'Brien,* 106 Minn. 125, 118 N. W. 366; *State ex rel. Reed v. Garrett,* 76 Mo. App. 295; *State ex rel. Andrews v. Boyden,* 21 S. D. 6, 108 N. W. 897, 15 Ann. Cas. 1122.)

A construction of a statute which will occasion public mischief or inconvenience ought to be avoided, unless the language employed will not permit of a different interpretation. (Sutherland on Stat. Const., sec. 323.)

The requirement of a majority of signatures would obviously exclude the possibility of two petitions, as there could not be two majorities each in favor of different towns. (*Currie v. Paulson,* 43 Minn. 411, 45 N. W. 855.)

The following cases indicate that from the form of ballot but one election can be held: *Peck v. Board of Supervisors,* 102 Mich. 346, 60 N. W. 985; *Hawes v. Miller,* 56 Iowa, 395, 9 N. W. 307.

Withdrawals from the petition after the same has been filed are not authorized. (*State ex rel. Andrews v. Boyden,* 15 Ann. Cas. 1122, note; *Evenson v. O'Brien, supra; Wilson v. Bartlett,* 7 Ida. 271, 62 Pac. 416.)

If anyone who signs can withdraw after filing the petition, a few persons may sign the petition with the concerted intention between them of withdrawing after the same has been filed and thus defeat it.  It hardly seems fair that in matters exciting as much acrimony as county seat removals, such practice should be permitted, and it would hardly seem that the statute would permit it when it has so carefully guarded these proceedings in every respect.

Karl Paine, for Respondents.

There cannot be two petitions for the removal of a county seat, each of which is signed by a majority of the qualified electors of the county.   (*State v. Boyden,* 21 S. D. 6, 108 N. W. 897, 15 Ann. Cas. 1122.)

That portion of sec. 457, Idaho Rev. Codes, which provides for a petition to be signed by a number of legal voters equal in number to a majority of all votes cast at the last general election, contravenes that portion of art. 18, sec. 2 of the constitution providing that no county seat shall be removed unless upon petition of a majority of the qualified electors of the county.   (*Lindsay v. Allen,* 112 Tenn. 637, 82 S. W. 171; 5 Cent. Dig., tit. "Counties," sec. 35, subd. 2.)

If the statute is valid, the lower court was right in granting the prayer of both petitions, as each petition was signed by a number of legal voters equal in number to a majority of all votes cast at the last general election.

A choice between the two petitions in this case would necessarily be arbitrary, and therefore indefensible.

Within certain limits the legislature has power to prescribe what shall be evidence, *prima facie* or conclusive, of any fact, but under the guise of establishing rules of evidence it cannot override the restrictions of the constitution or make anything conclusive evidence of the number of qualified electors in the county which, in the nature of things, has no connection with

that fact and does not reasonably tend to prove it. (*County Seat of Linn Co.*, 15 Kan. 500.)

With respect to the request of certain persons to withdraw their names from the Montour petition, see *State ex rel. Andrews v. Boyden et al., supra;* 5 Dec. Dig., tit. "Counties," sec. 34 (3) ; 13 Cent. Dig., tit. "Counties," sec. 36.

SULLIVAN, J.—This is an appeal from an order of the district court of Boise county ordering an election on the question of removing the county seat of said county from Idaho City to Weaverly. The order or judgment was made on August 20, 1912, the first day of the August term of said court for Boise county, but the judgment was not filed or entered until the 11th day of October, 1912. There is no dispute as to the facts in the case. The facts are substantially as follows:

On the 28th day of March, 1912, L. Knowlton and W. A. Carpenter, qualified electors of Boise county residing at Sweet, posted and published notice of intention to circulate a petition praying for the removal of the county seat from Idaho City to Montour, and more than ten days afterward commenced circulating a petition for that purpose. The proper posting and publication of said notice as required by the statutes were made and proved on the trial, and out of a total maximum vote of 1670 at the general election of 1910, said parties secured signers to the petition to the number of 1317, 102 of which signers failed to give their post-office address or precinct, and so under the statute could not be counted. By omitting them and also omitting the names of 234 signers who subsequently signed the petition for the removal of said county seat to Weaverly, which petition will be referred to hereafter, a balance of 979 was left against whom no objection could be made. Said first-mentioned petition was filed with the clerk on July 17, 1912, and remained on file there without any objection being taken thereto or contest being made against the same, either prior to or at the meeting of the court on August 20th. Pending

these proceedings with respect to the Montour petition, one
Martin Foss, a resident of Horseshoe Bend, said county, on
the 30th day of March, 1912, published and posted notice
of intention to circulate a petition for the removal of said
county seat to Weaverly. Said notice was properly posted
and published, as required by law, and proof of that fact
was made on August 20, 1912. Said Weaverly petition was
signed by 984 qualified voters, including the names of 234
voters who had previously signed the petition for the removal
of said county seat to Montour, but who also filed with the
Weaverly petition a petition asking for the withdrawal of
their names from the Montour petition. These names so
signed to the Montour petition, if counted on the Weaverly
petition, were equal to more than one-half of the number
of the votes cast at the preceding general election, but if
not counted on said Weaverly petition left it nearly 100 short
of the required number based on the number of votes cast
at the last general election. The written form of withdrawal
used by most of the signers is set forth in the transcript, and
was attached to the Weaverly petition and not with the Mon-
tour petition, and there was no application on file with the
latter petition to have the duplicate names withdrawn. The
Weaverly petition was filed with the clerk of said court on
July 29, 1912, more than ten days after the Montour peti-
tion was filed. On August 9, 1912, motions to dismiss, to
strike, contest and remonstrate against the Montour petition
were filed in said matter. Both of said petitions came up
for hearing on the first day of the August term of said court.
The Montour petition being first on file was first presented
to the court, and no objection, contest or remonstrance was
made in opposition thereto, and oral and documentary tes-
timony in support thereof was submitted to the court. There-
upon the said petition was granted, and it was ordered by the
court that an election on the Montour petition be held and
that ballots be printed in the following form:

> "For Removal of the County)   No.
> Seat to Montour          )   Yes."

The court thereupon took up the Weaverly petition and the various motions, contests and remonstrances were presented and overruled by the court, and the court found the facts substantially as above stated, and held that those who petitioned to withdraw from the Montour petition should be counted upon the Weaverly petition and not upon the Montour petition, and granted the Weaverly petition, and made the following order: ''It is further ordered that upon the ballots heretofore ordered by this court for the election upon the question of moving the county seat to Montour, there be written or printed in addition to the words, 'For removal of the county seat to Montour. No. Yes,' the further words, 'For removal of county seat to Weaverly. No. Yes.' ''

It will be observed from the foregoing statement of facts that the Montour petition was the first filed and the first passed upon and granted by the court. No objection or remonstrance whatever was made against the Montour petition, and the application for the withdrawal of certain names from that petition was made in connection with the Weaverly proceedings. The application, however, for the withdrawal of the names was filed before the opening of said term of court, but was not presented to or acted upon by the court until after the Montour petition had been presented and granted.

Counsel for appellants assigns six errors which go to the action of the court in denying contestant's motion to dismiss the Weaverly petition and in overruling the contests and remonstrance against the Weaverly petition, and in holding that there could be two petitions presented and granted, praying for the removal of the county seat to different points, and in permitting the persons who signed both petitions to withdraw their names from the Montour petition and in counting said names on the Weaverly petition, and in holding that there was a sufficient number of signatures on the Weaverly petition to justify an order for an election.

It is first contended by counsel for appellant that under the provisions of sec. 2, art. 18 of the constitution, but one petition for a county seat removal can be presented in any year. Said section of the constitution is as follows:

"No county seat shall be removed unless upon petition of a majority of the qualified electors of the county, and unless two-thirds of the qualified electors of the county, voting on the proposition at a general election, shall vote in favor of such removal. A proposition of removal of the county seat shall not be submitted in the same county more than once in six years, except as provided by existing laws. No person shall vote at any county seat election who has not resided in the county six months, and in the precinct ninety days."

That section clearly contemplates that the petition for a removal of a county seat must be signed by a majority of the qualified electors of the county at the time the petition is filed and before the court is authorized to order an election for such removal. The statutory provisions involved in this case are secs. 466 to 479, inclusive, of the Rev. Codes. Sec. 467 requires the petition to be signed "by a number of legal voters of said county equal in number to a majority of all votes cast at the general election."

It will be observed from the wording of said section of the constitution that the petition for removal must be signed by a majority of the qualified electors of the county. That evidently means by a majority of the qualified electors at the time the petition was signed, whereas sec. 467 of the Rev. Codes provides that the petition must be signed by a number of legal voters of said county equal in number to a majority of all votes cast at the last general election, and filed as provided by statute. This declaration of the legislature is merely a legislative declaration as to the evidence which shall be required to make a *prima facie* case. The substantive requirement in that regard is that prescribed by the constitution, the statute prescribing the adjective test by which the existence of the constitutional requirement is determined; in other words, if it is made to appear to the court that over one-half of the number of the voters who voted at the last preceding general election have signed the petition, that makes a *prima facie* case on behalf of the petitioners, and the court upon that showing would be justified in ordering an election, provided it was shown to the court that the num-

ber of electors in the county had not increased since the last general election. In establishing a rule of evidence the legislature cannot establish any rule that overrides or is repugnant to the provisions of the constitution.

It was said by this court in *Green v. State Canvassers,* 5 Ida. 138, 95 Am. St. 169, 47 Pac. 259, that it was impossible or impracticable to ascertain the exact number of voters there were in the state at any election, and conceding that to be correct, in order for said provisions of the constitution to have operation, it was necessary that the legislature create some test or evidentiary rule by which the number of voters equaling a majority of the qualified electors of the county could be ascertained. This the legislature attempted to do, by the provisions of said sec. 467, Rev. Codes. Said statute has been upheld by this court in *Wilson v. Bartlett,* 7 Ida. 271, 62 Pac. 416. The court there held that the rule thus established was a reasonable one which the legislature had a right to prescribe. That statute does not attempt to make the evidence there provided for conclusive, for if it did intend that the statute would be repugnant to the constitution. It is obvious that if a majority of the qualified electors of a county sign such petition, there can be but one such petition in a county for the removal of the county seat; in other words, there cannot be two majorities of electors in the same county.

The case of *State ex rel. Reed v. Garrett,* 76 Mo. App. 295, is the only case that has been called to our attention which seems to be directly in point. In that opinion the court said: "The sole question for decision is whether the statute governing the removal or change of county seats authorizes the submission of two propositions of removal at the same election. . . . . Prior to the revision of 1865, the corresponding section to the one quoted provided that an order for the removal of the seat of justice of a county could only be made upon the petition of *three-fifths* of the taxable inhabitants of the county. This requirement necessarily prevented the submission of more than one proposition of removal at the same election, for the obvious reason that two petitions con-

taining the requisite number of signers could not be obtained.''

The same may be said of the provisions of the section of the constitution above quoted. It requires the petition to be signed by a majority of the qualified electors of the county, and it is clear that two petitions, each containing a majority of the number required, could not be obtained. Under the provisions of the constitution and statute, more than one application may be made to the district court, if made in accordance with the provisions of the statute, for a removal of the county seat, and upon the hearing it is the duty of the court to consider all of such petitions at the same time, and to determine which, if either, contains a majority of the qualified electors of such county. That was not done by the trial court in this case. The trial court found, however, that the Montour petition contained 979 legal signers, and the Weaverly petition 935 legal signers, that making a total of 1914 qualified electors in said county as shown by said petitions. The court had that evidence before it, and it was its duty to determine the matter upon the legal evidence. It was thus made to appear that a majority of said 1914 qualified electors would be 958, and the Montour petition having been signed by 979 qualified electors, the court did not err in granting the Montour petition, and the Weaverly petition, not having a majority, should have been denied.

2. It is next contended that the court erred in permitting 234 of the persons who signed the Montour petition to withdraw their names from that petition and count them on the Weaverly petition. Nearly all of the decided cases upon this question seem to have been collected in the note to the case of *State ex rel. Anderson v. Boyden,* 15 Ann. Cas. 1122. The majority of the courts hold in favor of the right to withdraw from such a petition. The decisions vary as to the time and manner of withdrawal, but the better rule seems to be that a withdrawal in the manner required for original signatures is sufficient, and it is generally held that the withdrawals may be presented up to the time of the submission of the petition to be acted upon.

In the case at bar, the withdrawals were filed long before the first day of the term of court next preceding the election, the time at which the court is directed by statute to consider the petition. It does not appear whether or not the withdrawals were actually signed before the Montour petition was filed. Under that rule the withdrawals from the Montour petition ought to be allowed and the names of the persons withdrawing who signed the Weaverly petition should be counted upon such petition. We think this could be done in view of the fact that sec. 467, Rev. Codes, provides that the petition shall not be deemed a proposal to remove the county seat until the court shall order an election. Those withdrawals did not reduce the Montour petition below a majority, and the addition of them to the Weaverly petition did not give it a majority.

The judgment of the trial court must be modified as above indicated, and the election is ordered as to Montour and denied as to Weaverly. Costs awarded to appellants.

Stewart, C. J., and Ailshie, J., concur.