# AAD TEMPLE BUILDING ASSOCIATION v. CITY OF DULUTH AND OTHERS.[1]

December 22, 1916.

Nos. 20,213—(296).

**City of Duluth — suspension of ordinance by referendum to voters.**

1. In order to suspend the going into effect of an ordinance by referendum proceedings under the charter of the city of Duluth, a proper petition signed by the requisite number of qualified voters must be filed in the office of the city clerk before the date when the ordinance becomes the law. Whether such petition must be presented to the city council before the date when the law becomes operative is not decided.

**Same — duty of city clerk.**

2. The Duluth charter provides that the city clerk shall ascertain from the voters' register whether the petition is signed by the requisite number of qualified electors. *Held*, that a compliance in good faith by the clerk with this provision of the charter is all that is required.

**Same — section 50 of charter inapplicable.**

3. Certain provisions of section 50 of the charter, relating to amendments to a recall petition within ten days after the date of the clerk's certificate finding it insufficient, do not apply to a petition for referendum under the facts in the instant case, where it appears that such amendment would postpone the date on which the ordinance takes effect.

**Same — Ordinance not suspended by belated amendments to petition.**

4. Where an original petition for a referendum is found insufficient, amendments thereto, or amended petitions or additional parts of a petition, filed after the ordinance has gone into effect, are of no validity and do not operate to suspend the ordinance.

**Same — verification of petition.**

5. The charter of the city of Duluth provides that the petition for referendum may be contained in several parts or papers, each of which must be verified by one of the electors who signed the same. *Held*, that a section of a petition verified by a person who did not sign such section is of no validity whatever.

[1]Reported in 160 N. W. 682.

Action in the district court for St. Louis county for specific performance of a contract to sell real estate. Defendants' demurrer to the complaint was overruled and defendants answered. Plaintiff's motion for judgment upon the pleadings was granted, Dancer, J. Defendants' motion to open the judgment and grant them leave to serve and file an amended answer was granted. Defendants served an amended answer and the action was heard before Dancer, J., who made findings and ordered judgment in favor of plaintiff. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*Frank Crassweller,* for appellants.

*John Jenswold* and *John D. Jenswold,* for respondent.

SCHALLER, J.

The city council of the city of Duluth, by resolution, directed the city clerk to advertise for bids for the sale of a certain armory building belonging to the city. Sealed proposals were received, and, among others, one from respondent offering $50,000 for the property. This offer was accepted by the city council at the meeting held on December 27, 1915. An ordinance was adopted January 3, 1916, approved January 5, 1916, accepting the bid and directing the execution of a contract of sale. The ordinance provided that it should take effect and be in force 30 days after its passage and publication. It was duly published, the last publication occurring on January 5, 1916. At a regular meeting of the council held February 7, 1916, respondent tendered the cash payment called for by its bid, and demanded that the city execute the contract of sale as provided by the ordinance. The city refused, upon the ground that a petition for referendum on the ordinance had been presented to the city clerk, and that the council were uncertain whether the ordinance was suspended or in force. The respondent thereupon, and on the same day, brought this action for specific performance.

Appellant having answered, the matter was heard in due course, and judgment entered for the respondent directing the city to execute the contract.

A petition for a referendum was filed with the city clerk, who thereafter attached thereto his certificate that the said petition contained names

fewer in number than ten per cent of the total ballots cast at the general municipal election held April 6, 1915, and was, therefore, insufficient.

The court found the foregoing facts, and also found that the petition was composed of 34 parts, all of which were filed with the clerk on February 4, 1916; that the city council held weekly sessions for the transaction of business during the month of January, 1916; that neither the papers nor the petitions were presented to the city council during the 30 days following the last publication of the ordinance; that the petition was not submitted to the council until February 7, 1916; that the clerk immediately proceeded to ascertain from the voters' register whether or not the petitions were signed by the requisite number of qualified voters; that on February 5 he found that said petition did not contain the names of qualified voters equal in number to at least ten per cent of the total ballots cast at the last general municipal election; that the number of ballots cast at the last general municipal election was 13,228; that the last meeting of the city council for the transaction of business before the meeting of February 7 was held Janaury 31; that at the meeting of February 7 the clerk submitted the petition and the several parts thereof with his certificate to the city council; that the petition was not signed by ten per cent of the qualified electors of said city as ascertained from the voters' register; that the total number of names signed to the 34 parts was 1,455; that the petition, including all its 34 parts, contained the signatures of but 908 qualified electors; that four of the 34 parts comprising the petition were verified by persons who were not registered voters at the time the petition was filed; and that 16 of the 34 parts were verified by duly qualified and registered voters, but that each of the 16 papers was not verified by one of the signers thereof.

It further appears that on February 15, 1916, additional petitions, which contained 399 names, were filed with the city clerk. It also appears that, subsequent to the making of his first certificate, the clerk, with the aid of the city directory and of the post-office officials, made a further examination, and ascertained that the signatures of 128 registered qualified voters had been omitted from his check list of 908 persons, making a total number of registered voters as ascertained by the clerk of 1,036, instead of 908. The total number of qualified signers required by the charter was 1,323.

The charter provides that no ordinance shall go into effect until 30 days from the date of its last publication. Certain ordinances are specifically excepted from this provision, but this one is not within the excepted classes.

Section 50 of the charter pertains to the recall of city officials, section 51 to the initiative and section 52 to the referendum.

Section 52 provides in part as follows:

"No ordinance passed by the council shall go into effect before thirty (30) days from the time of its last publication, except when otherwise required by the general laws of the state, or by the provisions of this charter.

"If during said thirty (30) days a petition, signed by qualified electors of the city equal in number to at least ten (10) per centum of the total ballots cast at the last preceding general municipal election, protesting against the passage of such ordinance, be presented to the council, the same shall thereupon be suspended from going into operation; and it shall be the duty of the council to reconsider such ordinance, and if the same be not entirely repealed, the council shall submit the ordinance, as provided in section 51 of this charter, to a vote of the electors of the city, either at the next general municipal election, or at a special election called for that purpose, and such ordinance shall not become operative unless a majority of the qualified electors voting on the same shall vote in favor thereof. The provisions of sections 50 and 51 of this charter, respecting the forms and conditions of the petition, and the mode of verification, certification and filing, shall be substantially followed, with such modifications as the nature of the case requires."

The provisions of section 50 require that the petition shall be filed with the clerk, that the signatures to the petition need not all be appended to one paper, but each signer shall state his place of residence and street number, and that one of the signers of each such paper shall make oath that the statements therein made are true as he believes, and that each signature to the paper appended is the genuine signature of the person whose signature it purports to be. It is also provided that, within ten days from the date of filing such petition, the clerk shall ascertain from the voters' register whether or not said petition is signed by the requisite number of qualified electors, and that he shall

attach to said petition his certificate showing the result of said examination. As to the application of these provisions of section 50 there does not seem to be any controversy. It is, however, insisted that other provisions of that section are here applicable. These provisions follow:

"If by the clerk's certificate, the petition is shown to be insufficient, it may be amended within ten days from the date of said clerk's certificate. The clerk shall, within ten days after such amendment, make like examination of the amended petition, and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same, without prejudice, however, to the filing of a new petition to the same effect."

Section 51, which relates to the initiative, provides that "the provisions of section 50 of this charter, respecting the forms and conditions of the petition, the mode of verification, certification and filing, shall be substantially followed, with such modifications as the nature of the case requires." Section 52 contains a similar provision.

1. It must be borne in mind that sections 50 and 51 relate to a change of existing conditions. Section 50 relates to the recall of officials actually in office. Section 51 relates to the initiation of new and original legislation. Section 52 provides for the suspension and possible ultimate repeal of a law already enacted by the legislative body. Under the provisions of the charter, the ordinance becomes the law 30 days after its last publication, unless before the expiration of that time the electorate takes affirmative action to have it suspended and referred. Such action is in some respects analogous to the exercise of the veto power and, like the veto power, it must be taken and exercised within a limited time; otherwise the law goes into effect. Thus the necessary steps to suspend the going into operation of the ordinance must be at least properly initiated within the 30 days. A proper petition must be signed by the requisite number of electors and must be filed with the city clerk. It becomes unnecessary in the instant case to decide whether the petition must be presented to the city council within the 30 days, and we do not pass upon the question.

2. The charter provides that the clerk shall ascertain from the voters' register whether the petition is signed by the requisite number of qualified voters. No other means or method is pointed out or suggested. It might be contended that a properly verified and filed petition, signed by

the requisite number of qualified voters, would suspend the ordinance even though the signers' names were not on the voters' register. If this contention is correct, it would in many cases be impossible to determine whether an ordinance was the law or not the law until after trial and proof of facts of which the clerk can have no knowledge from the channels of information open to him. The charter having provided a method of ascertaining whether the petition is properly signed, we feel bound to hold that a compliance in good faith by the clerk with this provision is all that is required.

3. It is contended that, if the petition is shown by the clerk's certificate to be insufficient, it may be amended within ten days of the date of the clerk's certificate, as provided in section 50. This might perhaps be conceded if the amendment were made within the 30 days before the ordinance goes into effect. But it is also provided that, within ten days after such amendment is filed, the clerk shall make like examination of the amended petition, and if then found insufficient, "it shall be returned to the person filing the same, without prejudice, however, to the filing of a new petition to the same effect." This provision, if applied to section 52, might be so manipulated as to suspend the operation of the ordinance indefinitely. We are of the opinion that these provisions of section 50, relating to amendments, do not apply under the facts of the instant case. The veto must be interposed before the date when the ordinance takes effect.

4. After the clerk had made his certificate, and on the fifteenth of February, additional petitions were filed which contained names sufficient, if added to those on the original petition, to suspend the operation of the ordinance. We cannot concede that the filing of the additional petitions had any effect. The ordinance went into effect February 5, 1916, or not at all. After it went into effect, the filing of a petition, or part of a petition, would not suspend it.

It necessarily must be presumed that the members of the city council, who are the representatives of the people and to whom is confided the lawmaking authority, have acted with deliberation, honestly and in good faith in the performance of their duty in passing an ordinance for the government or welfare or benefit of the city, and that the passing of an ordinance by them is a valid exercise of the power delegated to them. The

right to suspend and possibly to revoke, as given by the referendum, (section 52), is an extraordinary power which ought not unreasonably to be restricted or enlarged by construction. It must be confined within the reasonable limits fixed by the charter. The charter prescribes what the petition for referendum shall contain, how it shall be signed and by whom it shall be verified. These provisions are intended to guard the integrity both of the proceeding and of the petition. Where a power so great as the suspension of an ordinance or of a law is vested in a minority, the safeguards provided by law against its irregular or fraudulent exercise should be carefully maintained. Thompson v. Vaughan, — Mich. — 159 N. W. 65.

Where the law relating to referendum provided that the petition might comprise any number of parts and that "each section shall have attached thereto the affidavit of the person soliciting signatures to the same, stating his own qualifications and that all the signatures to the attached section were made in his presence, that each signature to the section is the genuine signature of the person signing the same, and no other affidavit thereto shall be required," it was held that "without such affidavit a section has no validity whatever. It must, among other things, state the qualifications of the solicitor by whom it is made. He is required to be an elector within the county in which the section was circulated." Thompson v. Vaughan, supra.

5. When a charter provides that each part of a petition must be verified by one of the electors whose signature it contains, a part of the petition verified by any person not a signer of the part verified by him is of no validity whatever. Rushton v. Lelander, 15 Cal. App. 448, 115 Pac. 56. The provision requiring the signer to add to his signature his residence, street and number, is undoubtedly intended to prevent a duplication of signatures, to prevent the fraudulent use of the referendum by persons not electors and to assist the clerk in verifying the signatures by reference to the voters' register. The verification by one of the signers is the only safeguard provided by the charter to guard the integrity of the petition and to identify and verify the signatures attached thereto. The clerk's examination and certificate are based upon a petition filed and sworn to according to law. He has no other guide and no other means of deciding whether the sections of the petition are genuine or not.

In the instant case, the clerk, assisted by officials and employees in the postal service as well as other citizens, after making a careful investigation, could locate only 1,036 qualified signers of the petition. This is short of the required number, and, even if the petition had been properly verified in all its parts, it was still insufficient to suspend the ordinance.

Our conclusion is that the petition did not contain a sufficient number of names of qualified electors, that the names on those sections of the petition which were not verified by one of the signers thereof cannot be included as any part of the original petition, that the attempted amendment, filed 40 days after the ordinance was passed, was of no effect and that the ordinance in question is valid.

That part of the Duluth charter relating to the recall, initiative and referendum, appears to have been adopted from the charter of Los Angeles (Laws Cal. 1903, Concurrent Resolutions, c. 6, §§ 198a, 198b, 198c). The provisions of sections 198a, 198b and 198c of the Los Angeles charter are in all material respects identical with those of sections 50, 51 and 52 of the Duluth charter. The California court of appeals in 1911 and prior to the adoption of the charter of Duluth, construing the Los Angeles charter as to the referendum, arrived at practically the same conclusions. Rushton v. Lelander, supra. See also Dalton v. Lelande, 22 Cal. App. 481, 135 Pac. 54, and the notes in 50 L.R.A.(N.S.) 211, 220, and in Ann. Cas. 1916B, 824, 825.

Judgment affirmed.