FERLE *v.* PARSONS.

1. MUNICIPAL CORPORATIONS — LANSING CHARTER — ORDINANCES — REFERENDUM.

Sections 93, 94, 96, and 131 of the home-rule charter of the city of Lansing construed, and *held*, to require the same safeguards as to signatures, verification, authenticity, inspection, and certification of a referendum petition on a city ordinance as are required in said charter for the initiative and recall.

2. SAME—MANDATORY PROVISIONS.

The provision in said charter fixing the time for filing petitions for a referendum is mandatory.

3. SAME—TIME FOR FILING REFERENDUM PETITION.

Under said charter, after the expiration of ten days from the passage of an ordinance, a referendum petition in reference thereto could not be amended, although the charter (section 91) provides that ordinances shall take effect 30 days after their final passage.

Certiorari to Ingham; Wiest (Howard), J. Submitted April 6, 1920. (Calendar No. 29,181.) Decided April 22, 1920.

Mandamus by Jacob Ferle, individually and as mayor of the city of Lansing, to compel Judson A. Parsons, clerk of the city of Lansing, and the city council of the city of Lansing, to take the necessary steps to provide for a referendum vote on a city ordinance. From an order denying the writ, plaintiff brings certiorari. Affirmed.

*John McClellan* (*Clark C. Wood* and *Joseph H. Dunnebacke,* of counsel), for plaintiff.

*Samuel H. Rhoads,* City Attorney, and *Carl H. Reynolds,* Assistant City Attorney (*D. G. F. Warner* and *Edmund C. Shields,* of counsel), for defendants.

On initiative and referendum as applied to municipalities, see notes in 50 L. R. A. (N. S.) 195 and L. R. A. 1917B, 17.

FELLOWS, J. On June 22, 1908, a franchise ordinance was passed by the common council of the city of Lansing granting to the Lansing Fuel & Gas Company permission to maintain and operate gas works in that city and authorizing the use of the city streets for that purpose. It was accepted by the gas company two days later. It contained a provision authorizing the council to repeal it after 30 days' notice to the company for failure to perform its terms. On January 17, 1920, this franchise ordinance was by an ordinance adopted by the council of the city repealed, the gas company having admitted in writing its failure to perform the terms of the franchise ordinance and also waiving in writing the 30-day notice. The repealing ordinance was vetoed by the mayor of the city and passed over his veto January 19th. The entire vote cast for all candidates for mayor at the last preceding municipal election was 5,180. On January 27th there were filed with the defendant city clerk 68 separate petitions rolled together and tied around with a string containing in the aggregate 1,485 signatures asking for a referendum vote on the repealing ordinance. There was upon none of these petitions any affidavit showing the genuineness of the signatures or in fact any affidavit, nor was there indorsed thereon the names of three or any other number of persons designated as filing the same. The defendant clerk, acting upon the advice of the city attorney that such petitions were insufficient, declined to give his certificate of sufficiency although he did report to the council the filing of the petitions. Later further and similar petitions were filed and it was also sought to amend those already on file by attaching affidavits and indorsing the names of the persons filing the same; this request was likewise refused by defendant clerk on advice of the city attorney. This proceeding was then instituted by plaintiff as mayor and individually

to compel defendants by mandamus to take the necessary steps looking to a referendum vote on the repealing ordinance. The trial judge denied the relief, and we allowed this writ of certiorari to review such action.

The city of Lansing is operating under a home-rule charter, so-called, and the discussion revolves around sections 93, 94, 96 and 131 thereof. We quote these sections:

"SEC. 93. Any proposed ordinance may be submitted to the city council by petition, signed by qualified electors in number to the percentage hereinafter required. The signatures, verification, authentication, inspection, certification, amendment and submission of said petition shall except as provided in this chapter, be the same as provided for petitions under the recall provisions as prescribed in chapter seven of this charter.

"SEC. 94. If the petition accompanying the proposed ordinance, be signed by electors equal in number to twenty-five per centum of the votes cast for all candidates for mayor, at the last preceding election, and contain a request that the said ordinance be submitted to a vote of the people, if not passed by the city council, such city council shall either, pass such ordinance without alteration, in accordance with the accompanying petition, or forthwith, after the clerk shall attach to the petition accompanying such ordinance, his certificate of sufficiency, the city council shall call a special election, not less than fifteen days nor more than thirty days thereafter, unless a general or municipal election is fixed within ninety days thereafter, and at such special, general or municipal election, if one is so fixed, such ordinance shall be submitted without alteration, to the vote of the electors of the city."

"SEC. 96. No ordinance passed by the city council, except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency, and is passed by unanimous vote of the council, shall go into effect before ten days

from the time of its final passage; and if during said ten days, a petition signed by the electors of the city, equal in number to at least twenty-five per centum of the entire votes cast for all candidates for mayor, at the last preceding general municipal election, be presented to the city council, said ordinance shall thereupon be suspended from going into operation, and it shall be the duty of the city council to reconsider such ordinance; and if the same is not entirely repealed, the city council shall submit the ordinance as is provided in section ninety-four of this chapter, to the vote of the electors of the city, either at the general municipal election, or at the special municipal election to be called for that purpose, and such ordinance shall not go into effect or become operative, unless a majority of the electors voting on the same shall vote in favor thereof. Said petition shall in all respects, be in accordance with the provisions of section ninety-four of this chapter, and be examined and certified to by the clerk, in all respects as herein provided."

"SEC. 131. Any registered elector may make and file with the city clerk, an affidavit containing the name of the officer sought to be removed, the office from which such removal is sought, and a specific statement of the grounds for such removal, together with a petition signed by registered electors, equal in number to at least thirty per centum of the votes cast for mayor, on the final ballot at the last preceding election in the district where said officer was elected. Such petition shall be signed only by registered electors who participated in the election at which the person sought to be removed, was elected, and to each signature shall be attached his place of residence, giving street and number. Such signatures need not be on one paper, but a registered elector of the city shall make affidavits, that each signature appended to the petition, is the signature of the person whose name it purports to be and that the poll lists show that he participated in the election, at which the party sought to be removed was elected. All such petitions for the recall of any officer, shall be fastened together and filed as one instrument, with the endorsements thereon, of the names and addresses of three persons designated as filing the same."

It will be borne in mind that the initiative, the referendum and the recall together challenged the attention of the public. They were introduced into governmental affairs at the same time. They all proceed upon the same theory, *i. e.,* that public officials may not be sufficiently responsive to the temporary will of the electorate, and to a supposed desire of the electorate for greater participation in governmental affairs. They came together, had a common origin, and so far as the time at our disposal has permitted examination of the legislation of our sister States which have adopted them, and of city charters which contain them, like provisions have been made for instituting proceedings under each of them. As these proceedings may be, and usually are, instituted by a minority, safeguards have been thrown around each and all of them; and these safeguards have been of the same general character, applicable to all.

The crucial question involved in this case is whether, by the charter provisions here under consideration, the safeguards which are thrown around the initiative and recall provisions of the charter have been omitted from the referendum provisions of that instrument. If so, we cannot by judicial legislation insert them. But if by a consideration of the entire charter, and all its provisions, we are convinced that the safeguards thrown around the initiative and the recall have been adopted, so far as applicable, to the referendum, although by reference only and in inapt language, it becomes our duty to so construe the language as to give effect to each and all of the provisions of the charter and every sentence found therein. Turning now to the provisions having reference to the referendum (section 96) we find the concluding sentence of that section to be:

"Said petition shall in all respects be in accordance with the provisions of section ninety-four of this

chapter, and be examined and certified to by the clerk, in all respects as herein provided."

Considering this provision of section 96, the learned trial judge said:

"When we turn to section 94 we find that to give it sense we must of necessity look at section 93 because the petition mentioned in section 94 is the petition provided for in section 93. Section 94 therefore adopts of necessity the provisions of section 93 and section 93 adopts by reference the provisions of chapter 7 relative to the signatures, verification, authentication, inspection, and certification of the petition."

With this conclusion we are in entire accord. The provisions of section 94 are incomplete in themselves and the petition mentioned in that section is the petition specifically described in section 93. Beyond this it is provided that it shall be certified to by the clerk (and as a necessary corollary that the basis of such certificate shall be) "in all respects as herein provided." Examining section 96 we find that section contains no provision for certification or the basis for it. Manifestly the word "herein" does not refer to section 96. If we give it any effect, and it is our duty to do so, we must construe it as applying to some provision found "herein" but not in said section. The only logical conclusion we can reach is that the word "herein' refers to the charter itself, and to thus adopt by reference any applicable provision found in the charter. This construction does no violence to the language employed, and provides like safeguards for the initiative, the referendum, and the recall. It is inconceivable that the framers of this charter and the people who adopted it intended to require that the initiative and recall could only be set in motion by petitions having sponsors, with accompanying affidavits as to the genuineness of the signatures, but that such safeguards should not be applicable to petitions setting in

motion the machinery for the referendum, or that it was intended that a minority might set the machinery of the referendum in motion, and thus block the enforcement of an ordinance adopted by the legislative body of the city chosen by the people, by filing a petition unsponsored and without any proof of the genuineness of the signatures. To hold as we are requested to do by the plaintiff would open wide the door to the grossest kind of fraud and leave the referendum unsurrounded by any safeguards.

Having reached the conclusion that these safeguards are, by a proper construction of the provisions of the charter, thrown around the referendum as well as the initiative and the recall, the language of this court in *Thompson* v. *Secretary of State*, 192 Mich. 512, where the referendum of a law passed by the legislature was involved, becomes significant. We there said:

"Where a power so great as this is vested in a minority of the people, every safeguard provided by law against its irregular or fraudulent exercise should be carefully maintained."

Considerable space is devoted in plaintiff's brief to the claim that the trial judge held that the repealing ordinance took effect at the expiration of 10 days after it was passed over the mayor's veto, and to the further claim that such holding conflicts with section 91 of the charter, a section we have not quoted but which in substance provides that ordinances shall take effect 30 days after their final passage unless the city council shall fix a later date. We do not regard this of controlling moment, nor do we regard the opinion of the trial judge as so holding. What the trial judge held, and all that he intended to hold, as we understand his opinion, was that the repealing ordinance became effective as against the referendum at the expiration of the 10-day limit. In so holding he but followed the language of this court above quoted. The

provision fixing the time for filing petitions for a referendum is mandatory. See *Ralls* v. *Wyand*, 40 Okla. 323 (138 Pac. 158) ; *Thompson* v. *Secretary of State, supra.* Within the time limited in the charter there must be filed petitions which are in substantial compliance with the law, and if this is not done the ordinance becomes effective so far as the referendum is concerned.

What we have just said answers the contention of the plaintiff that these petitions might be amended after the 10 days had expired. The initiative and recall change no conditions and do not stop or retard legislation or the continuation of chosen officers in the performance of their duties, and the charter permits that such petitions may be amended after they are filed rather than to require all steps to be taken over again. But such provisions obviously are not applicable to referendum petitions which seek to stay the operation of an ordinance. Petitions to initiate legislation may be filed at any time, and to recall an officer at any time after he has been in office three months, but to stop the wheels of government, to prevent the taking effect of an ordinance adopted by the legislative body of the city, it is required that within 10 days valid and legal petitions must be filed. We do not hold that petitions which have been filed may not be amended during this 10-day period, what we do hold is that when the 10 days has expired invalid petitions may not be made valid by amendment and thus extend the charter period.

In the conclusion we have reached we are fortified by the decision of the supreme court of Minnesota in *Aad Temple Building Ass'n* v. *City of Duluth*, 135 Minn. 221 (160 N. W. 682), and the decision of the court of appeals of California in the case of *Rushton* v. *Lelander*, 15 Cal. App. 448 (115 Pac. 56), the only cases in point from other jurisdictions which the dili-

gence of counsel has brought to our attention. The Minnesota case had under consideration the charter of Duluth and the California case the charter of Los Angeles. While the language of the Duluth and Los Angeles charters is not identical with that of the Lansing charter or with each other, there is no substantial difference. In both cases the validity of the proceedings to institute a referendum of an ordinance was involved, in both cases the question of the right to amend was considered, and in both cases the same conclusions were arrived at that we have reached in this case.

The judgment of the circuit court is affirmed, but as the question is a public one no costs will be allowed.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.