(No. 6679.   November 20, 1939.)

S. O. KERLEY, Respondent, v. R. M. WETHERELL, City
Clerk of Boise City, Idaho, a Municipal Corporation,
Appellant, and BOISE WATER CORPORATION, a
Corporation, Intervenor and Appellant.

[96 Pac. (2d) 503.]

C. Stanley Skiles, for Appellant R. M. Wetherell, City Clerk.

Carey Nixon and Dean Driscoll, for Appellant Boise Water Corporation.

S. L. Tipton, for Respondent.

SUTPHEN, D. J.—On May 23d, 1938, the Council of Boise City passed, and the Mayor approved an ordinance granting to the Boise Water Corporation a franchise to own, maintain and operate a water system in Boise, specifying that it was to take effect on the thirty-first day after its passage and approval.

On June 22d, 1938, there was filed with appellant, M. A. Regan, as City Clerk, 42 separate referendum petitions signed by 2,052 persons, requesting that such ordinance be submitted to vote of the people before going into effect. The next meeting of the Boise City Council following the filing of these referendum petitions with said clerk was held June 27, 1938, but the clerk made no report thereon at said meeting.

On July 2 and July 9, 1938, there were filed with said clerk requests by a total of 652 signers, that their names be withdrawn from said petitions. On July 11, 1938, being the date of the next meeting of the Council following its meeting of June 27, 1938, the appellant City Clerk advised the Mayor and City Council of the filing of said petitions, stating, however, from his investigation he found said petitions were not

signed by the required number of qualified electors and that he therefore was not making certificate as to the number of votes cast for Mayor at the last preceding general municipal election and the number of signers on said petitions, nor presenting such certificate, petitions and ordinance or any of them to the Council.

On September 13, 1938, the respondent, on behalf of himself and all other persons similarly situated, commenced this proceeding for a writ of mandate to compel said City Clerk to certify to the Council the number of names on said referendum petition and the entire vote cast for Mayor at the last preceding general municipal election.

Thereafter, the trial court permitted the appellant Boise Water Corporation to intervene and file its complaint in intervention.

Demurrers to appellant City Clerk's amended answer and to appellant-intervenor's amended complaint in intervention were sustained by the trial court without leave to amend. Thereupon judgment was entered as prayed for by petitioner and the writ prayed for ordered issued.

Separate appeals of both the City Clerk and the intervenor are now before this court.

It is not disputed that the entire number of votes cast for Mayor at the last preceding general election was 5,824; that 25 per cent thereof is 1,456; and that the referendum petitions at the time they were filed with appellant City Clerk bore the signatures of 2,052 petitioners.

The facts alleged in the amended answer and complaint in intervention are substantially the same and briefly outlined, they allege that only 851 of the signers of the referendum petition can be counted as qualified electors thereon. The alleged disqualifications total 1,201, and are summarized as follows:

> 24 were non-residents of Boise City;
>
> 11 were duplications;
>
> 568 were not registered electors;
>
> 1 signature by mark, not witnessed;
>
> 212 signatures, other than those included in above figures appeared upon petitions not verified by a registered elector;

385 signatures withdrawn, being the difference between
the 652 withdrawals and 297 that are included in one
or another of the above figures;

and said amended complaint in intervention and amended
answer also allege that less than 1,456 signers of the peti-
tions read or heard read the ordinance or understood its con-
tents, meaning and purpose.

The section of the Boise City Charter which provides for
the initiative and referendum is sec. 16a, which it to be found
at page 56 et seq. of the Local and Special Laws of 1927.
The first six subdivisions of said section prescribe the requi-
sites of an initiative petition, the procedure thereon, and ef-
fect thereof. Subdivision 7 provides for the referendum and
is as follows:

"If, prior to the date when any ordinance shall take effect,
a petition, which petition and its requirements shall be sub-
stantially as hereinbefore provided, with the necessary changes
made therein to meet the needs of this section, signed by quali-
fied electors equal in number to 25 per centum of the entire
vote cast for mayor at the last preceding general municipal
election, shall be filed with the clerk, protesting against the
enactment of such ordinance, it shall, by filing of such petition,
be suspended from taking effect. Immediately upon the filing
of petition the clerk shall certify the number of votes cast
for mayor at the last preceding general municipal election,
and the numbers of signers of such petition, and shall pre-
sent such certificate, petition and proposed ordinance to the
council at its next meeting. Thereupon the council shall
immediately reconsider such ordinance, and, if it does not
entirely repeal the same, shall submit it to popular vote at
the next municipal election; the council in its discretion, may
call a special election for that purpose; and such ordinance
shall not take effect unless the majority of the qualified elec-
tors voting thereon at such election shall vote in favor
thereof."

The first question to be disposed of is whether the inter-
venor is entitled to intervene in these proceedings.

It does not appear that respondent contends that the right
of intervention provided for in sec. 5–322, I. C. A., does not

apply to *mandamus* proceedings. The question presented appears to be simply whether the complaint in intervention discloses such right in the present case.

In *State ex rel. McKelvey v. Barnes*, 55 Ida. 578, 45 Pac. (2d) 293, this court said:

"The statute (section 5–322, I. C. A.) grants the right of intervention in both 'actions' and 'proceedings' and extends that right to 'any person . . . . who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both,' and authorizes such intervenor to either join 'the plaintiff in claiming what is sought by the complaint' or to unite 'with the defendant in resisting the claims of the plaintiff,' or to assert a demand 'adversely to both the plaintiff and the defendant.' "

and the court further went on to say: "This statute should be and has been given a liberal construction," citing *Potlatch Lumber Co. v. Runkel*, 16 Ida. 192, 101 Pac. 396, 23 L. R. A., N. S., 536, 18 Ann. Cas. 591. Appellant-intervenor is the party to whom the franchise in question is granted, and it is apparent that as a result of these proceedings such franchise, which such appellant claims to be in effect, may, if respondent prevails, be found to have been suspended, and in such case, either repealed or put to an election.

In view of the liberal construction given our statute on intervention, it appears that the appellant-intervenor has shown such an interest in the matter in litigation as entitles it to intervene.

This brings us to the question as to the sufficiency of the facts alleged to reduce the number of qualified signers on the referendum petition to less than 1,456, so as to render it ineffective to suspend the ordinance granting the franchise in question.

In this connection counsel have presented the following questions:

1. Is an elector who is not registered qualified to sign the referendum petition?

2. Can the signatures on a referendum petition which is verified only by one who is not a registered elector, be counted?

3. Can the signers of a referendum petition withdraw therefrom, and if so, when?

4. Is it essential to the validity of a petitioner's signature that he has either read or heard read the ordinance in question, or that he fully understands its contents, meaning and purpose before signing?

The appellant-intervenor alleges that 568 non-registered persons signed the referendum petition, and the first question so presented relates to the sufficiency of such allegations.

The answer to this question depends upon the intent and meaning of the language used in the Boise City Charter, as the provisions of the state Constitution relating to Initiative and Referendum (art. 3, sec. 1) and the statutes adopted pursuant thereto (chap. 210, 1933 Session Laws) are limited by their own terms to state legislation. There are no constitutional provisions nor any general statutes recognizing either the initiative or the referendum for municipalities, except sections 49–3301 to 49–3317, inclusive, I. C. A., pertaining to cities organized under the commission form of government plan, which has no application to a specially chartered city, such as Boise City.

The Charter provisions relative to the initiative require the the petition therefor to be signed by "qualified electors," and the City Clerk is expressly directed to "examine and from the voters registered ascertain whether or not said petition is signed by the requisite number of qualified electors."

It thus clearly appears that the words "qualified elector," as therein used are intended to mean not only that the signer of such a petition be an elector of Boise City, but that he also be registered as such. (*In re Initiative Petition,* 176 Okl. 155, 55 Pac. (2d) 455; *Hawkins v. City of St. Joseph,* (Mo.) 281 S. W. 420; *Coney v. Mayor,* 96 Kan. 46, 149 Pac. 689; *Aad Temple Building Assn. v. City of Duluth,* 135 Minn. 221, 160 N. W. 682, 683; *Thompson v. Vaughn,* 192 Mich. 512, 159 N. W. 65; *Ferle v. Parsons,* (1920) 210 Mich. 150, 177 N. W. 397.)

The Charter provisions for a referendum petition, immediately following the subdivisions of said section dealing with the initiative, not only require the referendum petition to be

signed by ''qualified electors,'' but also expressly say ''which petition and its requirements shall be substantially as hereinbefore provided.''

Words and phrases are construed according to context. (*County of Ada v. Boise etc. Club*, 20 Ida. 421, 118 Pac. 1086, 38 L. R. A., N. S., 101; *Filer Highway Dist. v. Shearer*, 54 Ida. 201, 209, 30 Pac. (2d) 199.) In *Sprouse v. McGee*, 46 Ida. 622, 269 Pac. 993, this court, at page 631 of the Idaho report, said:

''Other portions of the same act or section may be resorted to as an aid to determine the sense in which a word, phrase or clause is used, and such phrase, word or clause, repeatedly used in a statute will be presumed to bear the same meaning throughout the statute unless there is something to show that there is a different meaning intended, such as a difference in subject matter which might raise a different presumption.''

While it does not appear to be necessary to be beyond the provisions of sec. 16a of Boise City Charter to determine that the term ''qualified electors'' as therein used includes registration as an essential element, it may be noted that article 6, section 2 of the Constitution, so far as material, says:

''Except as in this article otherwise provided, every male or female citizen of the United States, twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he or she offers to vote, thirty days next preceding the day of election, if registered as provided by law, is a qualified elector.''

Thus it would appear that the constitutional definition of a ''qualified elector'' includes registration as an element thereof, where the municipal or statutory law requires registration; however, our attention has been called to the case of *Wilson v. Bartlett*, 7 Ida. 271, 62 Pac. 416, which construes this and other constitutional provisions together with Statutes of 1899 relating to requirements of petitions for removal of county seats, as not requiring a petitioner therefor to be a registered voter. The majority opinion in its summary of its conclusions said: ''We think from a consideration of all the sections of the constitution bearing upon the question of electors, and provisions of our law referring to the same subject, that it

was not the intention to require a signer of a petition for removal of a county seat to be a registered voter.''

It thus appears such decision is based upon an interpretation of the intention of the law there under consideration.

█  The legislature clearly has the power to make registration an essential element. Section 4, article 6 of the Constitution says:

''The legislature may prescribe qualifications, limitations, and conditions for the right of suffrage, additional to those prescribed in this article, but shall never annul any of the provisions in this article contained.''

In the case of *Fisher v. Masters,* 59 Ida. 366, 83 Pac. (2d) 212, the court said:

''After reading and examining this provision of the constitution and the debates had in the convention, there is no room for doubt but that the framers of the constitution intended to vest in the legislature the power to prescribe *additional* 'qualifications, limitations and conditions' for the exercise of the right of suffrage. . . . . For the foregoing reasons cases from other states not having such constitutional provision holding that the legislature can neither add to nor subtract from the qualifications of electors as defined in the constitution of such states, have no application and furnish slight assistance here.''

The second question we are confronted with involves the appellant-intervenor's contention that all names on any of the referendum petitions which are not verified by a registered elector should not be counted. Subdivision 3 of section 16a of the Charter requires that: ''each petition must be verified by at least one qualified elector ——.'' This subdivision is clearly applicable to and by reference is made a part of the requirement of subdivision 7 of section 16a, which expressly provides for the referendum.

█  If we are correct in our conclusion that the words ''qualified elector'' as used in said section was intended to mean electors of Boise City who are registered as required by law, then it follows that only such a qualified elector can verify such a petition, and the names of signers on a referendum petition not so verified, cannot be counted. (*Mann v.*

*Brison,* 120 Cal. App. 450, 7 Pac. (2d) 1110, 9 Pac. (2d) 257; *Rushton v. Handley,* 15 Cal. App. 448, 115 Pac. 56; *Ferle v. Parsons,* 210 Mich. 150, 177 N. W. 397; *Aad Temple Bldg. Assn. v. City of Duluth,* 135 Minn. 221, 160 N. W. 682.)

The third question involves the right of the signers of a referendum petition to withdraw therefrom. From the amended complaint in intervention, it appears 652 persons withdrew their names and signatures from the referendum petition, 385 of whom were registered electors and not on any of the petitions not properly verified or otherwise disqualified.

The question is whether such withdrawals can be made as was attempted in this case. The appellant-intervenor in support of its contention has cited the language of this court in *Lippencott v. Carpenter,* 22 Ida. 675, 127 Pac. 557, 558; *McQueen v. Moscow,* 28 Ida. 146, 152 Pac. 799; *Maxwell v. Terrell,* 37 Ida. 767, 220 Pac. 411. The statutes under consideration in those cases provided no definite limit as to the time within which petitions should be presented, but here the charter expressly limits the time within which the referendum petition must be filed to a specified time after the passage and approval of the ordinance sought to be put to a referendum.

Appellants have cited cases in which it would appear from the facts therein involved that this distinction could have been made, but the decisions in such cases in passing on the question as to the time within which withdrawals may be made, do not discuss this particular point and make no distinction between petitions in which the law provides a definite limit of time for filing and those where the law provides no such limit. (*State ex rel. Mohr v. City of Seattle,* 59 Wash. 68, 109 Pac. 309; *Jefferson Highway Transp. Co. v. City of St. Cloud et al.,* 155 Minn. 463, 193 N. W. 960; *Ray v. Colby & Tenney et al.,* 5 Neb. Unof. 151, 97 N. W. 591.)

Our attention has not been called to any case in which the particular question is discussed where the court has expressly refused to recognize such distinctions, but in the case of *State v. City of Independence,* 114 Kan. 837, 221 Pac. 245, where a similar question was before it, the court said:

"The question to be determined is whether under a statute requiring an election to be called, if petitioned for by a stated proportion of the electors within a certain number of days from a fixed time, signatures to such petition can be withdrawn at the pleasure of the signers after the expiration of the period.

"The appellees rely largely upon the language of this court that a petitioner ought to be permitted to have his name stricken from a petition 'if his application therefor is made . . . . prior to final action upon the petition.' *State ex rel. v. Eggleston,* 34 Kan. 714, 10 Pac. 3. That language is correct and accurate as applied to the situation in which it was used—that arising under a statute authorizing or requiring the calling of an election whenever it should be petitioned for by a certain number of persons, without a definite limit as to the time within which the petition should be presented. It does not apply where as in this instance all right to add names to the petition expires at a given time."

And in the case of *Texas Power & Light Co. v. Brownwood Public Service Co. et al.,* (Tex. Civ. App.) 87 S.W.(2d) 557, the court in passing upon a similar question said:

"While there are a great many decisions announcing the rule, without express qualification, that the right to withdraw exists up to the time the council acts on the petition, we have found and have been cited to none expressly holding that this right extends beyond the time limit in which the petition may be filed, in those cases where such time limit is provided.

"We have not been cited, nor have we found, any case which has held that the right of withdrawal (absent a showing of good cause, such as fraud, mistake, etc.) extends beyond the requisite time limit in which the petition may be filed. On the contrary the authorities seem uniform in denying the right in those cases."

Subsection 7 of sec. 16a of the Boise City Charter heretofore quoted, requires the petition for referendum to be filed at any time after the passage of the ordinance and "prior to the date when" the ordinance shall take effect and further provides that upon filing such petition the ordinance "shall be suspended from taking effect" and that "immediately

upon the filing of the petition the clerk shall certify the number of votes cast for mayor at the last preceding election'', etc.

The ordinance in question was passed and approved May 23d and by the express provisions therein was to go into effect the thirty-first day after its passage and approval. If a sufficient petition was not filed within such time, the ordinance became effective, and being so effective, the referendum no longer applies to it.

It is thus clear that no referendum petition could legally be filed, nor could any additional names be added after the date specified as the date the ordinance was to go into effect. (*Ferle v. Parsons, supra; Rushton v. Handley, supra; Aad Temple Bldg. Assn. v. City of Duluth, supra.*) The majority opinion of this court is that any signer of the petition may have his name removed from the petition at any time, up to the time of the actual filing of the petition with the clerk; and in no event should withdrawals be allowed after the petition has been filed with the clerk.

The fourth question relates to the allegations of the amended complaint in intervention to the effect that less than the required number of 1,456 of the purported signers of the referendum petition read, or heard read, the ordinance in question or understood such ordinance.

Subdivision 2 of section 16a requires each signer to declare that he has read, or heard read at length, section by section, the proposed ordinance or measure thereto attached, and fully understood its contents, meaning and purpose, and subdivision 3 of said section requires that each petition must be verified by at least one qualified elector, which verification shall state that affiant knows that all the persons whose names are signed to the petition are qualified electors of the city, and that each signer, prior to placing his name upon the petition, read, or heard read at length, section by section, the proposed ordinance or measure thereto attached.

The referendum petitions on their face contain the required statements, and the verifications are in the prescribed form. The question, therefore, is whether the signatures of such persons who subscribed to statements, as to facts expressly required by the provisions of the Charter to be stated therein,

can be counted, if such statements are proven to be false. Our answer to that question is that such signature cannot be counted, but the provisions of the Charter that the signer must read or hear read the ordinance at length, section by section, is for the purpose of requiring him to know the substantial contents and purpose of the petition he signs, and that a reasonable compliance with this provision is all that the law requires.

In view of our determination of the questions thus presented, the respondent's demurrer to the amended complaint in intervention should have been denied and overruled.

We will now take up the question as to the sufficiency of the amended answer filed by the City Clerk. It is contended by respondent that the City Clerk has no authority to pass upon the qualification of the signers of a referendum petition and that consequently the facts alleged do not constitute a defense.

The provisions of subdivision 7, section 16a of the Boise City Charter, which expressly provides for the referendum, contains this language:

" . . . . Immediately upon the filing of petition the clerk shall certify the number of votes cast for mayor at the last preceding general municipal election, and the numbers of signers of such petition, and shall present such certificate, petition and proposed ordinance to the council at its next meeting."

And also says "which petition and its requirements shall be substantially as hereinbefore provided." The appellant City Clerk contends this last-mentioned provision has the effect of incorporating with the referendum provisions, the portion of subdivision 4 of the same section, which says:

" . . . . the city clerk shall examine and from the voters registered ascertain whether or not said petition is signed by the requisite number of qualified electors."

It is to be noted that the said provision of subdivision 7 is not supplemented by any additional clause such as "and shall be examined and certified by the clerk in all respects as herein provided," which supplemental clause, or a clause of similar import is contained in the provisions of some of the

referendum provisions of charters construed by the courts in cases cited by council. (*Ferle v. Parsons, supra; Rushton v. Handley, supra.*)

It is also to be noted that the portion of subdivision 7 now under consideration does not say that the clerk shall certify "the number of qualified electors," but simply says he shall certify "the number of signers of such petition."

We conclude that the language used in the Charter relating to the referendum does not evidence any intent to incorporate the requirements contained in the initiative that the clerk ascertain whether or not the petition is signed by the requisite number of qualified electors.

Our interpretation of the provisions of the Charter is that upon the filing, within the time prescribed, of a referendum petition complying substantially in form with the requirements of the Charter and having the requisite number of signers, the clerk is not required or permitted to inquire as to the qualifications of the signers as to the truth or falsity of verifications, and he would have no authority to inquire into and pass upon the genuineness of the statement of the electors that they had read and understood the ordinance; nor could he question the affidavit of the circulator to the effect that he knew "that all of the persons whose names are signed to the petition are qualified electors of the city and that each signer prior to placing his name upon the petition read or heard read, section by section, the proposed ordinance or measure thereto attached." It is the clerk's duty to act upon it and to make his certificate as required by the express provision of said subdivision 7, unless the sufficiency of the petition be challenged in a court of competent jurisdiction.

The facts alleged in the City Clerk's amended answer consequently are insufficient to justify a refusal on his part to make the required certification, and the lower court properly sustained the demurrer to the appellant City Clerk's amended answer.

But upon sustaining the demurrer to the amended answer, the lower court should not, in view of the issues raised by the complaint in intervention, have entered judgment that peremptory writ of mandate issue, as was done in this

case, but should have awaited the determination of the issues raised by the amended complaint in intervention.

Mandamus is not a writ of right. Its issuance lies in the sound judicial discretion of the court, and where a mandate to compel an act would be useless, it may refuse the writ. (18 R. C. L., p. 271.)

In *Leland v. Twin Falls Canal Co.*, 51 Ida. 204, 3 Pac. (2d) 1105, at page 208, the court said:

"It is the rule in this state that *mandamus* will not issue when it appears that third persons, not parties to the proceedings, have real legal controversies or rights relating to the subject matter which may be affected by the judgment. (*Lewis v. Mountain Home Co-op. Irr. Co.*, 28 Ida. 682, 156 Pac. 419; *Stethem v. Skinner*, 11 Ida. 374, 82 Pac. 451; *Stoner v. Carter*, 48 Ida. 745, 285 Pac. 470.)"

It appears from the facts alleged in the appellant-intervenor's amended complaint in intervention that it would be entitled upon similar allegations of fact in a proper proceeding in said court, to an order restraining appellant-defendant from making the certificate in question, if the said clerk had threatened so to do.

Boise City appears to have such an interest in the controversy that a complete determination requires its presence, and the trial court should order it brought into the proceedings, as provided by sec. 5–324, I. C. A.

The judgment is hereby affirmed as to the City Clerk and reversed as to the intervenor, and the cause is remanded to the trial court for further proceedings pursuant to the views herein expressed. No costs awarded.

Ailshie, C. J., and Budge and Holden, JJ., concur.

Sutphen, District Judge, sat in place of Morgan, J., who deemed himself disqualified.

GIVENS, J., Concurring in Part and Dissenting in Part.— The previous decisions of this court culminating in *Maxwell v. Terrell*, 37 Ida. 767, 220 Pac. 411, and the weight of authority are clearly to the effect that any signer of the petition may have his name removed from the petition at any time

up to action thereon by the clerk, but not after the clerk has acted upon the petition, or after the time limit for filing the petition.

While reasonable compliance with the charter provisions requiring that the signers of the petition must have read or heard read the ordinance, and that they understand it, is sufficient, the compliance must be substantial, otherwise these protective provisions are of no avail. Otherwise I concur.

ON PETITIONS FOR REHEARING.

(Dec. 16, 1939.)

AILSHIE, C. J.—In this case the appellant city clerk and the intervenor each filed a petition for rehearing. After an examination of these petitions, we have reached the conclusion that there is nothing therein contained that requires or would justify a rehearing.

When the *remittitur* goes down, it will be the duty of the city clerk to certify the petition as required by the charter and indicated by the opinion of this court. In the meanwhile, the city will be brought in as a party in accordance with the directions contained in the opinion heretofore filed. The trial court should restrain and enjoin the *city council* from calling an election on such petition *until the issues raised by the pleadings can be fully heard and determined.* In other words, until just such issues, as have been properly raised by the complaint in intervention, with respect to the qualifications of signers and their compliance with the charter requirements, have been heard and adjudicated, the council should not order an election. If such issues are determined in favor of the intervenors or contestants, the election will not be ordered at all. If, on the contrary, it is found that the petition has a sufficient number of qualified signers, within the purview of the opinion, then, of course, it will be the immediate duty of the city council to order an election.

The petitions are denied.

Budge, Givens and Holden, JJ., and Sutphen, D. J., concur.