LUTZ et al. v. CITY OF NEW ORLEANS.

(District Court, E. D. Louisiana.   May 29, 1916.)

No. 15456.

1. COURTS ⊜⟶322(2)—FEDERAL COURTS—JURISDICTION.
    Where a verified bill alleged diversity of citizenship and that the amount involved as to each plaintiff exceeded $3,000, the federal district court must, no counter affidavit having been offered, be deemed to have jurisdiction.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 878, 879; Dec. Dig. ⊜⟶322(2).]

2. COURTS ⊜⟶365—PRECEDENTS—STATE COURTS.
    The decision of a state court construing a local municipal ordinance must be followed by the federal courts.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. ⊜⟶365.]

3. MUNICIPAL CORPORATIONS ⊜⟶703(1)—REGULATIONS—DISCRIMINATION.
    A New Orleans ordinance, requiring the operators of jitney busses and street cars to furnish a surety bond in the sum of $5,000 for each vehicle operated, is not invalid as being a discrimination in favor of street car companies, though the protection afforded by the bond is, in view of the larger number of passengers carried by street cars, less than in the case of jitney busses.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1509; Dec. Dig. ⊜⟶703(1).]

4. CONSTITUTIONAL LAW ⊜⟶274—RIGHTS OF CITIZEN—FOURTEENTH AMENDMENT.
    Const. Amend. 14, does not create any right in citizens to use public property, as streets, in defiance of the state laws.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 726; Dec. Dig. ⊜⟶274.]

5. MUNICIPAL CORPORATIONS ⊜⟶703(1) — STREETS — REGULATION — COMMON CARRIERS.
    A municipality may regulate the use of streets by common carriers, no one having a vested right to use them for that purpose; and, as absolute liability for injuries may be imposed, hence an ordinance, requiring a common carrier by jitney busses to furnish a bond of $5,000 for each vehicle operated, for the protection of passengers or persons injured, is not invalid.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1509; Dec. Dig. ⊜⟶703(1).]

6. MUNICIPAL CORPORATIONS ⊜⟶703(1)—STREETS—POLICE POWER.
    Under its police power, a city may require those operating jitney busses as common carriers of passengers to furnish a surety bond in the sum of $5,000 for the protection of any one injured, for the requirement of the bond necessarily tends to promote the public safety by requiring the carrier to exercise greater care.
    [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1509; Dec. Dig. ⊜⟶703(1).]

7. MUNICIPAL CORPORATIONS ⊜⟶703(1)—STREETS—BONDS—SURETY BONDS.
    In view of the greater desirability of a corporate surety, a municipal ordinance, requiring common carriers using the streets to furnish bonds for the protection of those who might be injured, signed by a surety

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

company, is not invalid because of that requirement, particularly where those objecting did not show they could have obtained individual sureties.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1509; Dec. Dig. ☞703(1).]

8. TREATIES ☞8—TREATY RIGHTS—NATURE OF TREATY RIGHTS.

It is settled that the rights of property protected by a treaty are such as are capable of a sale or transfer, and not such as are purely personal, as the right to operate a jitney bus, as a common carrier, on the streets of a municipality.

[Ed. Note.—For other cases, see Treaties, Cent. Dig. § 8; Dec. Dig. ☞8.]

In Equity. Bill by Felix Lutz and others against the City of New Orleans. Application for preliminary injunction. Application denied.

C. C. Friedrichs and Harold A. Moise, both of New Orleans, La., for plaintiffs.

I. D. Moore, City Atty., Jno. J. Reilley, Asst. City Atty., and J. F. C. Waldo, Asst. City Atty., all of New Orleans, La., for defendant.

FOSTER, District Judge. This is a suit to enjoin the city of New Orleans from putting into operation certain provisions of Ordinance 2346 adopted by the commission council April 27, 1915, for the purpose of regulating what are popularly known as "jitneys," the term being used to designate an automobile carrying passengers for five cent fares, very much the same as the ancient omnibus.

The material facts, set out in the bill and either admitted by the answer or not rebutted, are these: Plaintiffs are each the owner of an automobile personally operated by him in the transportation of passengers for a uniform fare over designated routes in the city of New Orleans. They have paid for, and have received, licenses from the city to so operate for the year 1916, and have complied with all the provisions of the said city ordinance except section 2 thereof, which provides that no one shall operate an automobile, as is being done by the plaintiffs, without first having filed with the commissioner of public safety a bond, executed by a surety company authorized to do business in the state of Louisiana, in the sum of $5,000 for each vehicle operated, payable to the city of New Orleans, for the benefit of any person who may be damaged in his person or property by the fault of the automobile operator. The section further requires the bond to be approved by the commission council, and by section 3 of the ordinance a failure to comply with the ordinance is made punishable by a fine of not less than $10 or more than $25, or imprisonment for not more than 30 days, or both, and each day's violation is declared a separate offense. It is impossible for the plaintiffs to comply with the provisions of section 2, because no surety company will execute the bond required unless the principal deposits with it $5,000 in cash, or collateral security, and they are unable to make such deposit.

Upon these facts the plaintiffs complain and say that the said section of the ordinance violates section 1 of the Fourteenth Amendment of the Constitution of the United States, in that it deprives them of

liberty and property without due process of law, and deprives them of the equal protection of the law.

[1] The answer of the city challenges the jurisdiction of the court. The bill alleges the amount as to each plaintiff exceeds $3,500, based on the destruction of his business, to say nothing of the fines that may be imposed, and, in addition to the federal questions presented, shows diversity of citizenship. A case of jurisdiction is thereby made out, the bill is sworn to, and no counter affidavit has been offered. For the purposes of this application I must assume the court has jurisdiction.

[2] The plaintiffs complain only of section 2 of the ordinance. As to this they contend that the city cannot require a bond at all as a condition precedent to their doing business; that if the bond can be required, the city cannot restrict plaintiffs to the selection of a surety company to sign it; that the amount of $5,000 is excessive, and should a bond be furnished complying in every respect with the ordinance, it may be arbitrarily rejected by the council.

In the case of the City of New Orleans v. Hoa Le Blanc, 71 South. 248, the Supreme Court of Louisiana considered the very questions here presented, and held that the city has the right to impose conditions on a common carrier for hire using the street of New Orleans, such as the plaintiffs, and also that the commission council cannot arbitrarily reject a bond complying with the ordinance. To this extent, at least, I am bound to follow that decision. The court also held the provisions of the ordinance to be in every respect necessary and reasonable and a valid exercise of the police power of the city. The decision is persuasive on the other points involved, and is entitled to great weight as construing the local law, notwithstanding it was rendered by a divided court. And it does not stand alone, as other courts of high authority have expressed similar views in construing other ordinances of the same tenor. See Nolen v. Riechman (D. C.) 225 Fed. 812; Ex parte Cardinal, 170 Cal. 519, 150 Pac. 348, L. R. A. 1915F, 850; Greene v. San Antonio (Tex. Civ. App.) 178 S. W. 6; Ex parte Sullivan (Tex. Cr. App.) 178 S. W. 537; State ex rel. Ryals v. Memphis (Tenn.) 179 S. W. 635; Ex parte Dickey (W. Va.) 85 S. E. 781, L. R. A. 1915F, 840.

Considering the Le Blanc Case, supra, the only questions left open for decision by this court are whether the ordinance: (a) Deprives plaintiffs of the equal protection of the laws; (b) is confiscatory of the plaintiffs' property; and (c) denies them liberty of contract.

[3] The first question may be easily disposed of. It is contended that the purpose of the ordinance is to discriminate against the jitneys in favor of the street cars. Various provisions of the ordinance are pointed out as sustaining this, but plaintiffs are not complaining of the whole ordinance. The bill alleges compliance by them with every part of the ordinance except section 2, and this section imposes exactly the same burden on all. While it may be easier for the street cars to comply with the ordinance than for plaintiffs to do so, and by a mathematical calculation it may be shown that the security required is more for each passenger carried in the case of the jitneys, these facts would

not make the provision so unequal as to deprive plaintiffs of their constitutional rights in this regard.

[4-6] Is the provision requiring a bond signed by a surety company so unreasonable as to be confiscatory of plaintiffs' property in violation of the Constitution of the United States? As to this it is at once evident the only property plaintiffs could be deprived of is the right to use the streets as common carriers. Plaintiffs have paid their licenses for the current year, but, even if these licenses could not be, in effect, revoked by subsequent legislation, it suffices to say they were issued after the adoption of the ordinance. Plaintiffs, however, do not pretend to have a franchise to use the streets, but rely upon their general rights as inhabitants of the city. It is settled that the Fourteenth Amendment does not create any right in a citizen to use the public property in defiance of the laws of the state. Davis v. Massachusetts, 167 U. S. 43, 17 Sup. Ct. 731, 42 L. Ed. 71. No one has the vested right to make the use of the streets of the city the basis of his business, such as a common carrier, regardless of what may be his rights as a citizen to otherwise use them. Statutes regulating common carriers may go to great lengths without being confiscatory. Rates and schedules may be regulated, and the absolute liability of insurers, regardless of negligence, may be imposed. See Clark v. Russell, 97 Fed. 900, 38 C. C. A. 541, and authorities there cited. Considering the financial irresponsibility of plaintiffs alleged in the bill and the dangerous nature of the business as shown by the tabulated statement of accidents filed, the requirement of a bond to indemnify passengers and others who may be injured by the carelessness of the jitney operator is well in line with other statutes for the protection of passengers such as those referred to. Aside from these considerations the city contends for the validity of the ordinance as an exercise of its police power. In answer it is urged by the plaintiffs that the giving of bond would not tend to promote the safety of either the passengers or the public. The same objection was urged with regard to the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657-8665]), but the Supreme Court held that any measure that would impel the carrier to avoid or prevent negligent acts would be a proper regulation of commerce. See Second Employers' Liability Cases, 223 U. S. pp. 50, 51, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. The same reasoning applies here. There can be no doubt that the safe operation of an automobile depends largely on the caution, skill and responsibility of its driver. Any measure that will tend to secure careful, competent men as drivers of jitneys will promote the safety of passengers and the general public. It is at once apparent that the requirement of a bond would have this effect. No one would be willing to become surety for a reckless or incompetent driver, and the fact that he was under bond, with his responsibility fixed, would, of itself, make the driver more careful. It would appear, therefore, that the city could properly require the giving of a bond in the reasonable exercise of its police power.

[7] Does the requirement that the bond be signed by a surety company violate plaintiffs' liberty of contract? Assuredly not. It is shown

that a number of surety companies are authorized to do business in the state. It is not shown they exact exorbitant fees, or that the plaintiffs could procure personal surety on a better basis or at all. The only reason plaintiffs cannot procure the surety bonds in compliance with the ordinance is because they cannot deposit cash or collateral equal to the amount of the bond. Personal surety might make the same requirement. In any event the contrary is neither alleged or proved. Considering the greater desirability of corporate surety in any case, a superiority sometimes recognized by the law itself (see Bankrupt Act [Act July 1, 1898, c. 541, § 50, 30 Stat. 558 (Comp. St. 1913, § 9634)] bonds of trustees and referees), it can hardly be said that the provision that the bond must be signed by a surety company is more onerous than would be a requirement of personal surety of equal responsibility.

[8] It remains to be noticed that the plaintiffs set up the violation of certain indefinite treaty rights. This point has not been pressed in argument, but could not be material, as it is settled that the rights of property protected by treaty are such as are capable of sale or transfer, and are not such as are purely personal. Chinese Exclusion Case, 130 U. S. 581, 9 Sup. Ct. 623, 32 L. Ed. 1068.

It is plain in this case that plaintiffs cannot do business in compliance with the ordinance merely because of their financial condition. The same result might follow if the city required any one doing the jitney business to operate a certain kind of automobile costing more than $5,000, or made some other provision as to the character of the service, and it cannot be said that such a requirement would be beyond the powers of the commission council, or would operate to deprive plaintiffs of their constitutional privileges.

The application for a preliminary injunction will be denied.