# JEFFERSON HIGHWAY TRANSPORTATION COMPANY v. CITY OF ST. CLOUD AND OTHERS.[1]

May 25, 1923.

No. 23,372.

**Withdrawal of signatures to petition of protest against ordinance.**

1. The home rule charter of the city of St. Cloud provides that an ordinance shall not go into effect until 30 days after its passage, and that if, within said 30 days, a petition of protest, signed and sworn to by a certain number of the electors, is presented to the city council, the ordinance shall be suspended until wholly repealed by the council, or until adopted at an election to be called. On the last day for presenting such petition, one was left with the city clerk, but not until some time thereafter could it be presented at a meeting of the council for action. It is *held:* Since the council and not the clerk must determine the sufficiency of the petition, persons who had signed might file withdrawals of their signatures up to the time it was presented to the city council by the clerk.

**No conflict between statute licensing motor vehicles and ordinance.**

2. Under the charter, the city council may license and regulate the business of carrying passengers for hire by motor vehicles in the city. The state statute, under which motor vehicles are taxed and licensed or registered, does not conflict with the ordinance.

**License fee not excessive.**

3. The license fee imposed by the ordinance is not shown to be excessive.

**Classification by business not unreasonable.**

4. Nor is the classification made because of the character of the business unreasonable.

**Gradation of fee according to seating capacity not arbitrary.**

5. The gradation of the fee in the intercity motorbus class based on seating capacity of the bus is not arbitrary or discriminatory.

**Objections to ordinance not sustained.**

6. Minor objections to the ordinance *held* without merit.

[1]Reported in 193 N. W. 960.

Action in the district court for Stearns county to restrain defendant city and its officers from enforcing an ordinance requiring motor vehicles to be licensed and bonded. The motion for a temporary injunction was heard by Roeser, J., who made findings and denied the motion. From the order denying a temporary injunction, plaintiff appealed. Affirmed.

*James Bennett, Jr., J. D. Sullivan* and *Selover, Schultz & Mansfield,* for appellant.

*R. B. Brower,* for respondents.

HOLT, J.

Plaintiff appeals from an order refusing to grant a temporary injunction restraining the city of St. Cloud from enforcing an ordinance of that city which requires motor vehicles carrying passengers for hire to be licensed and bonded.

Plaintiff contends: The operation of the ordinance was suspended because of the filing of a petition of protest by the voters; the charter does not grant the city council authority to enact such an ordinance; it is void as being contrary to the general laws of the state; and, finally, it is unreasonable as to classification and discriminatory and excessive as to the fee.

The city of St. Cloud has a population of about 18,000, and is under a home rule charter. Section 99 thereof enacts that no ordinance passed by the council shall go into effect before 30 days from the time of its final passage, with some exceptions not here important, and provides that "if, during said thirty days, a petition signed by qualified electors of the city equal in number to at least ten per cent of the entire vote cast for mayor at the last preceding municipal election, protesting against the passage of such ordinance, be presented to the council, the same shall thereupon be suspended from going into operation," and it shall be the duty of the council to reconsider the ordinance and, if not entirely repealed, to submit it to the vote of the electors. No person shall be received as a petitioner until he shall have taken and subscribed an oath that he has read the ordinance and knows the contents thereof and that in

his opinion the adoption of the same will not be for the general welfare and benefit of the city. The section also directs that as to the forms and conditions of the petition, the mode of verification, certification and filing, the provisions of chapter 2 of the charter be followed as far as applicable. Under the provision of chapter 2 we find that nomination and election petitions must be presented to the city clerk at least 30 days before the election, and he must examine their sufficiency, and, if sufficient, file them 25 days before the election. After so filed it "cannot be withdrawn or added to and no signature shall be revoked thereafter." Sections 19, 22.

The court in the instant case found that a valid petition required 242 signatures; that a petition protesting the passage of the ordinance, purporting to be signed by 253 voters, was presented to and left with the city clerk on the day the 30 day period expired; that before it could be presented to the council at a session thereof, there were filed with the clerk written withdrawals by 41 of the original signers of the petition; and that the council, upon receiving said protest petition and withdrawals, considered and found the petition insufficient, and unanimously declined to entertain the same.

It seems to us the principle applied in Slingerland v. Norton, 59 Minn. 351, 357, 61 N. W. 322, and Tucker v. Board of Co. Commrs. 90 Minn. 406, 97 N. W. 103, justified the action of the city council. That body, and not the clerk, was to act upon the petition and when presented to the council for action it was accompanied by the filed withdrawals by certain of the signers. The city clerk is not given any time within which to determine the number of valid signatures as in the case of petitions of nomination, nor is he charged with any duty in regard to certifying to the proper form of the petition of protest, nor to file it. It is to be presented to the council, and it cannot well be so presented until that body is assembled in a formal meeting, although the handing to and leaving with the clerk may be held sufficient to stay the ordinance until the council acts. If, when presented to the council for consideration, it is made to appear that some signers were not electors, or that the required affidavit was false or lacking in statement of facts, or that persons who

thoughtlessly or by misrepresentation became petitioners, had filed proper withdrawals, it became the duty of the council to eliminate all improper signatures and then ascertain the sufficiency of the petition.

Under laws which direct a certain city official, like the city clerk or the comptroller, to examine and pass on the sufficiency of a referendum petition and certify his findings to the city council within a certain time after being presented to him, it has been held that before so certified by the officer withdrawals are permissible, but not afterwards. State v. City of Seattle, 59 Wash. 68, 109 Pac. 309. We think Aad Temple Bldg. Assn. v. City of Duluth, 135 Minn. 221, 160 N. W. 682; Locher v. Walsh, 17 Cal. App. 727, 121 Pac. 712; Ferle v. Parsons, 210 Mich. 150, 177 N. W. 397, lend support to this view rather than the contrary. Under the St. Cloud charter there is no such examination or certificate by the clerk or any other official, but it is left to the city council to pass on the sufficiency of the petition. We hold that, after the petition is left with the clerk and before it is or can be presented by him to the city council at a meeting when that body may act, signers may withdraw their names.

We see no merit in the contentions that the city lacks power to license and regulate motor vehicles doing business as common carriers of passengers, and that the ordinance is contrary to the state law. Section 70 of chapter 6 of the charter, confers the power "to license and regulate hackmen, draymen, expressmen and all other persons engaged in carrying passengers, baggage and freight." There is also the power usually granted municipalities to protect and promote public welfare. We have been referred to no case in this state which intimates that a grant of power in language similar to that quoted is insufficient to authorize the enactment of an ordinance providing for the licensing of a business which generally is recognized as one prone to become oppressive or inimical to public welfare and safety. State v. Finch, 78 Minn. 118, 80 N. W. 856, 46 L. R. A. 437, is authority for the proposition that the business of carrying passengers for hire by auto vehicles in or through a city is one which needs to be regulated and licensed. The licensing of the

business conducted implies control over the instrumentality by which it operates. Vehicle, as used in the charter, includes automobiles and auto busses.

There is nothing to the claim that the enactment of such an ordinance conflicts with the statute now in operation under which the state issues the auto vehicle licenses. Chapter 418, p. 596, Laws of 1923, which goes into effect July 1 next forbids boroughs, villages and cities to impose a license fee or require a bond from motor vehicles engaged as common carriers through and between such municipalities. The so-called license issued by the state evidences the payment of a property tax, and is not a police measure. The one does not exclude the existence or operation of the other. State v. Jarvis, 89 Vt. 239, 95 Atl. 541; State v. Scheilder, 91 Conn. 234, 99 Atl. 492; City of Spokane v. Knight, 101 Wash. 656, 172 Pac. 823.

In Applewold Borough v. Dosch, 239 Pa. St. 479, 484, 86 Atl. 1070, it is said: "When the owner of a motor vehicle licensed by the state engages in a particular kind of business for profit in a borough, and conducts it in such a manner as to require additional police protection and necessitates an increase in public expenditures, we can see no reason why the municipal authorities should be denied the power to require the payment of a reasonable license fee for the privilege of conducting such a special business. This is a police regulation intended as a protection to the public, and those who enjoy the benefits should contribute to the cost of such protection." The thought expressed is not only applicable to the proposition that the state license of motor vehicles is not in conflict with this ordinance, but also bears on the reasonableness of the license fee.

The record sustains the finding that the yield from all license fees provided for by the ordinance will, in all probability, not be sufficient to pay the actual cost of proper regulation and policing of the businesses licensed thereunder. The schedule of fees is based upon the seating capacity of the motor vehicle used, thus: For one having a seating capacity of not more than 7 persons, $25 and $10 for each additional vehicle of that capacity operated by the same person, firm or corporation; for one seating not less than 8 nor more than

11, $50; for one seating not less than 12 nor more than 14, $75; for one seating not less than 15 nor more than 20, $100; for one seating not less than 21 nor more than 30, $125; for one seating not less than 31 nor more than 40, $150; for one seating not less than 41 nor more than 50, $175; for one seating more than 50 persons, $200. It is also provided that motor vehicles having a seating capacity of more than 7 persons engaged exclusively in carrying passengers between hotels and depots wholly within the city shall pay a license fee of $25.

Plaintiff charges as arbitrary and discriminatory the placing of busses or motor vehicles, seating more than 7 persons and operating wholly in carrying passengers between hotels and depots within the city, in a more favored class, as to the amount of license fees to be paid by the owner, than busses engaged in transporting passengers from other cities and towns to, from or through St. Cloud. This ordinance is not a property taxing measure wherein the rule of uniformity and against discrimination is applied much more strictly than when an ordinance is directed at the licensing of a business which is a proper subject for regulation. Relating to classifications in ordinances of the last named sort the judgment of the legislative body is not interfered with unless manifestly arbitrary and without reasonable justification. This obtains even when there is a right to impose a license tax for the privilege of conducting a business. Burroughs, Taxation, § 77. Placing a certain intracity passenger business in a different class from intercity transportation seems to us a matter of legislative judgment. The class of busses that carry passengers exclusively between hotels and depots are operated upon a different plan from the intercity busses and also differently from the taxis or jitneys which run everywhere in the city. The business of these classes is essentially different, so also is the use of the streets by them. Whether one or the other will occasion the city greater expense for police surveillance was also for the proper consideration of the city council in making the classification. Where power to exact a tax by license is granted a city, it has been held that its legislative body may classify the objects

to be licensed upon some reasonable basis. This justified placing business trucks in a different class from other cars in Park v. City of Duluth, 134 Minn. 296, 159 N. W. 627. See also Kellaher v. City of Portland, 57 Ore. 575, 110 Pac. 402, 112 Pac. 1076; Hazleton v. City of Atlanta, 144 Ga. 775, 87 S. E. 1043; Allen v. Bellingham, 95 Wash. 12, 163 Pac. 18.

Plaintiff also contends that the license fee is unreasonably high, and the graduation in the class within which plaintiff falls is arbitrary. In view of the finding that the proceeds from the fees that may be collected under this ordinance will no more than cover the expense of its enforcement, there is not much merit in the claim that the fees are excessive. Another party, operating auto busses through St. Cloud, admits the reasonableness of the city's license schedule. In Star Transp. Co. v. Mason City, 195 Iowa 930, 192 N. W. 873, a license fee of $300 for each motor bus in intercity traffic was held not unreasonable, and this appears to be imposed under the police power granted the city. In ex parte Dickey, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F, 840, a license fee of $50 for vehicles seating 4, and $70 for those seating more was held valid.

A municipality having power merely to license and not tax may fix a fee sufficient to cover the cost to enforce the regulation. This includes the added cost for policing the business. Why may it not also include the additional expense of the added wear and tear the business causes to the paved streets of the city? To properly apportion in the fee the expense to which a city may be, in licensing and regulating a business, presents some difficulty. The business which entails the higher expense in all justice should pay the higher fee. Various methods adopted by municipalities, if founded upon some reasonable basis, have been sustained when challenged in court. No method can hope to be just and equitable to the cent or dollar in every case. Horse power was the measure as to the ordinary automobile in Park v. City of Duluth, supra. In Hazleton v. City of Atlanta, supra, the seating capacity was used, and such was the case in Ex Parte Counts, 39 Nev. 61, 153 Pac. 93; Ex Parte Sullivan, 77 Tex. Cr. 72, 178 S. W. 537; and Ex Parte Bogle, 78 Tex. Cr.

1, 179 S. W. 1193. In Salt Lake City v. Christensen Co. 34 Utah 38, 95 Pac. 523, 17 L. R. A. (N. S.) 898, a city having power to license and tax business was held not to have acted arbitrarily in fixing the fee at a certain amount where the capital employed was more than a stated sum and less than a higher stated sum. So a like license fee for bakers, graded upon the baking surface operated, was approved in Wisconsin Assn. of Master Bakers v. Weigle, 167 Wis. 569, 168 N. W. 383, but the ordinance was held void because a certain baking surface was exempted.

One provision of the ordinance may at first blush savor somewhat of discrimination. In case of a taxicab or motor vehicle having a seating capacity of not more than 7 the fee is $25, and $10 for each additional car of the same capacity operated by the same person or firm. No similar reduction for additional cars applies to the rest of the schedule. We are reluctant to hold the whole ordinance invalid because of this variation in the schedule. It is likely that the council had in mind that ordinarily the person or firm who engages in the taxi business, carrying its passengers everywhere in the city, employs a great number of vehicles of small seating capacity, and that, therefore, it would be just to make a smaller charge for each vehicle after the first. The charter, strictly speaking, does not grant the power to license the vehicle, but rather the one who engages in the business of carrying passengers for hire. It may also be true that conditions have changed since the decision in State v. Finch, supra, was rendered, and that, as to transportation for hire within a city, the time has arrived when, as to certain features thereof, the regulation and license fee may partake of a repressive nature to some extent.

We do not understand that the ordinance is attacked on the ground of the bonding provision. Such a provision has been upheld when the bond is reasonable. Hazleton v. Atlanta, supra. Ex Parte Parr, 82 Tex. Cr. 525, 200 S. W. 404; Lutz v. City of New Orleans, 235 Fed. 978. In the case of Star Transp. Co. v. Mason City, supra, the bond of $50,000 for each bus employed was held excessive.

It is urged that if every city and village through which plaintiff's

busses pass may enact like ordinances exacting license fees and bonds, its business will be destroyed.  The doubt here is a proper field for statutory regulations.  But we cannot assume that license fees or regulations of other municipalities will be excessive and unreasonable.  Moreover, it appears that the city of St. Cloud is a terminal point for many intercity autobus lines.  It is a large and growing city with paved streets.  What is a reasonable license fee there may be highly excessive in a smaller municipality en route on transportation lines.  And as already noted after July next plaintiff by chapter 418, p. 596, Laws 1923, will be free from the city license tax and bonding requirement.  We do not think the trial court in denying a temporary injunction abused judicial discretion.

The order is affirmed.


QUINN, J. (dissenting.)
I dissent.