Allen, J.
 

 This is an original action in mandamus, wherein this court is asked to issue a peremptory writ commanding the auditor of the city
 
 *228
 
 of Cincinnati to issue to the relator a license as the owner and operator of a taxicab. The petition avers that the relator for a considerable period has' been engaged in the business of carrying passengers for hire through the streets of Cincinnati, and has built up a valuable trade and patronage in that business; that he now owns and operates one taxicab, and has complied with all the terms and requirements of the ordinances of the city regulating the ownership and operation of public vehicles, excepting that he has refused and still refuses to furnish to respondent as city auditor a policy of insurance, or, in lieu thereof, a surety bond executed by responsible individuals or by a company authorized to write such bonds, indemnifying the relator against loss or injury through the negligent operation of his taxicab.
 

 The relator has demanded of the respondent that a license be issued to him in spite of the fact that the relator has refused to furnish the indemnity in question. The facts set forth in the petition are admitted in the answer, which states that the respondent refuses to issue the license in question and will continue such refusal unless ordered by this court to issue the license in accordance with the prayer of the petition.
 

 The pertinent portions of the ordinance in question here are as follows:
 

 “Sec. 702-2c. No license to operate any public vehicle kept for passenger hire, other than a motorbus, shall be issued or renewed by the city auditor, and it shall be unlawful to operate any such public vehicle, or permit such to be operated, unless and until the applicant shall deposit with
 
 *229
 
 the city auditor a policy or policies of liability insurance issued by a responsible insurance company, approved as to sufficiency by the city auditor and as to legality by the city solicitor, providing indemnity for, or protection to the insured against loss, and agreeing to pay to any judgment creditor any final judgment rendered against the insured by reason of the liability of the insured to pay damages to others for bodily injuries, including death at any time resulting therefrom, and for damage to or destruction of property sustained during the term of said policy by any person other than employees of the insured, and resulting from negligent operation, maintenance or use of such licensed public vehicles.
 

 “The extent of the liability of the insurer shall be, as to any one licensed public vehicle operated by the applicant, his agent or employee the sum of five thousand dollars ($5,000) on account of injuries to, or death of, any one person in any one accident; and, subject to such limit as respects injury to, or death of, one person, ten thousand dollars ($10,000) on account of any one accident resulting in injury to or death of more than one person; and one thousand dollars ($1,000) on account of damage to property in any one accident.
 

 “In the case of property damage, the insurer shall have the option of limiting his total liability as follows:
 

 For not more than 2 public vehicles____________ $2,000.00
 

 For each vehicle in excess of 2, not in excess of 5---------------------------------------------------- 1,000.00
 

 For each vehicle in excess of 5, not in excess of 10. 750.00
 

 
 *230
 
 For each vehicle in excess of 10, not in excess of 25 ---------------------------------------------- 500.00
 

 For each vehicle in excess of 25, not in excess of 50________________________________________________ 300.00
 

 For each vehicle in excess of 50---------------- 200.00
 

 “Any insurer limiting his total liability as to property damage in accordance herewith shall notify the auditor forthwith of any insurance payments made on behalf of applicant which would operate to reduce the outstanding total limited liability. The auditor shall thereupon. require adequate additional insurance and in the event of the failure of applicant to furnish the same on ten days’ notice, his license or licenses shall expire. Failure of the insurer to notify the auditor shall operate to maintain the total liability of the insurer without allowance for payments made.
 

 “In lieu of the policy or policies of insurance herein provided for, applicant may furnish a bond executed by a surety company authorized to do business in the state of Ohio, or by two personal sureties, approved as to sufficiency by the city auditor and as to legality by the city solicitor, holding and binding the principal and sureties to the same liability as in the case of policies of insurance provided for hereunder. It shall further be permissible for the applicant to furnish insurance as to damages for personal injuries, including death, and an indemnity bond as to property damages, or
 
 vice versa.”
 

 Section 702-2d, which need not be given in full here, makes it a misdemeanor to operate a vehicle for hire not licensed in accordance with the pro
 
 *231
 
 visions of the ordinances of the city of Cincinnati, and imposes penalties therefor.
 

 The relator claims that Sections 702-2c and 702-2d of the ordinance in question are unconstitutional and void, upon the ground that they are in excess of the legislative power of the council of the city of Cincinnati; that the provisions in question are unreasonable, arbitrary, and oppressive; that they are void for indefiniteness and uncertainty; that they are discriminatory; that they do not effect the purpose expressed in their title, nor bear any real or substantial relation thereto; and that they are in contravention of the constitutional rights of the relator as guaranteed to him by the Constitutions of the state of Ohio and of the United States.
 

 The question specifically raised in this case, therefore, is whether within this state a charter municipality has power to require a taxicab operator to furnish bond or insurance, indemnifying himself against the negligent operation of his taxicab, as a condition precedent to the issuing of a license to operate such taxicab on the city streets. We hold that the city has such power, and that the ordinance in question is a valid and constitutional enactment, for the following reasons:
 

 (1) That, under Section 3, Article XVIII, of the Ohio Constitution, the city has the power in question as part of its police power.
 

 ■ (2) That the ordinance in question has a direct relation to the public safety.
 

 Section 3, Article XVIII, of the Constitution of Ohio, provides that “municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within tlieir limits
 
 *232
 
 such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
 

 It is not claimed that the ordinance in question is in conflict with any general law. While an extensive body of law has been enacted by the Legislature dealing with the operation of motor vehicles over the state highways, the statutes have not occupied the field of the regulation of taxicabs within municipalities. In fact, under the Ohio Code, the regulation of the streets is placed specifically within the power of the cities. Municipalities are authorized “to license and regulate the use of the streets by persons who use vehicles, or solicit and transact business thereon” (Section 3632, General Code), and this provision is emphasized by the provision that “municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law” (Section 3714, General Code).
 

 It is evident that the ordinance applies only to taxicab operation within the city of Cincinnati. Counsel for the city concede that the ordinance has no relation to judgments arising out of the negligent operation of a taxicab outside of the confines of the city. Any other construction would be untenable, for the city has no power to legislate for territory outside of its limits, and every city ordinance bears that limitation, whether or not expressed. This construction disposes of a main branch of the relator’s argument that the ordinance in question encroaches upon a zone of state sovereignty.
 

 Thus limited, the power exercised in this ordinance is a local power. It regulates a purely local
 
 *233
 
 traffic condition, which is closely related to the physical safety of the members of the general public in the city of Cincinnati.
 

 Hence the enactment of this ordinance falls directly within the police power, which is the source of the power residing in legislative bodies to enact legislation intended to protect the public safety, the public health, and the public morals.
 

 ■ It is contended, however, by relator, that the ordinance in question has no relation to the public safety, for it merely provides for the collection of judgments rendered against taxicab operators. We are not inclined to take so narrow a view of the protection of the public. Proper protection of the public is not limited to prevention of injury. Proper public protection comprehends the taking of measures to make whole members of the public who have suffered injury, and in this broad and legitimate sense this measure would fall within the police power if it applied only to remedies for injury after the occurrence thereof.
 

 However, this measure has a vital relationship to protection of the public before injury has occurred. Legislative measures which tend to require that drivers of vehicles be financially responsible for injuries resulting from their negligent acts have a direct tendency to make such drivers more careful in the operation of their cars. The ordinance here attacked has been intelligently drawn with this exact purpose in mind. It requires the continual maintenance of the bond in question, and it is evident that, if the operator of the taxicab is negligent, surety companies and responsible individuals may refuse either in the
 
 *234
 
 first instance to guarantee the operator’s liability, or may, after executing one such guaranty, refuse to renew the bond. This fact of itself may compel a higher degree of care on the part of the operator of the taxicab, and therefore tends to secure safety on the public streets and to lessen the chance of injury.
 

 A large body of case law has grown up around the very proposition which we are declaring herein. Courts of last resort of a considerable number of the states have held that statutes or ordinances requiring the furnishing of a surety bond for the protection of any one injured by a jitney bus or common carrier are valid and constitutional. Thus in
 
 Lutz
 
 v.
 
 City of New Orleans
 
 (D. C.), 235 F., 978, it was held that under its police power a city may require those operating jitney busses, as common carriers of passengers, to furnish a surety bond in the sum of $5,000 for the protection of any one injured, for the requirement of the bond necessarily tends to promote the public safety by requiring the carrier to exercise greater care. This is the almost universal holding upon this point, as laid down in Nolen
 
 v. Riechman
 
 (D. C.), 225 F., 812;
 
 City of Dallas
 
 v.
 
 Gill
 
 (Tex. Civ. App., 1917), 199 S. W., 1144;
 
 Hadfield
 
 v.
 
 Lundin, Pros. Atty., 98
 
 Wash., 657, 168 P., 516, L. R. A., 1918B, 909, Ann. Cas., 1918C, 942;
 
 Ex parte Dickey,
 
 76 W. Va., 576, 85 S. E., 781, L. R. A., 1915F, 840;
 
 Hazleton
 
 v.
 
 City of Atlanta,
 
 144 Ga., 775, 87 S. E., 1043;
 
 West
 
 v.
 
 City of Asbury Park,
 
 89 N. J. Law, 402, 99 A., 190;
 
 Commonwealth
 
 v.
 
 Theberge,
 
 231 Mass., 386, 121 N. E., 30;
 
 In re Cardinal,
 
 170 Cal., 519, 150 P., 348, L. R. A., 1915F, 850;
 
 Huston
 
 v.
 
 City of Des
 
 
 *235
 

 Moines,
 
 176 Iowa, 455, 156 N. W., 883, and other decisions which we do not cite.
 

 The relator also claims that the classification made in the ordinance is unreasonable, arbitrary, oppressive and discriminatory upon the ground that the ordinance applies only to owners of taxicabs, and not to the owners of other vehicles, such as trucks, moving vans, and express wagons. The difference in the nature of the service generally rendered by taxicabs as contrasted with the service usually rendered by trucks, vans and delivery wagons, in usual speed of operation, immediately suggests a valid reason for the making of this particular classification, which we hold to be not oppressive, not discriminatory, and reasonable.
 

 The relator also claims that the provisions of the third paragraph of Section 702-2c are indefinite and discriminatory. These provisions are given above. In our judgment they are not indefinite; neither are they discriminatory. As a matter of fact, the probability that a number of accidents will occur at the same time owing to the negligent operation of different taxicabs belonging to the same owner decreases in proportion to the number of taxicabs operated by the same owner, and hence justifies the classification in the schedule.
 

 As stated heretofore by this court in
 
 Pritz
 
 v.
 
 Messer,
 
 112 Ohio St., 628, 639, 149 N. E., 30, the question of the reasonableness of this ordinance is one in the first instance for the determination of the council which enacted it. We are not authorized to substitute our judgment for that of the council as to the wisdom of the legislation. We hold that there is a positive and vital connection between
 
 *236
 
 the enactment and the public safety, and that there is some reason for the classification made, and hence under the established rules of constitutional law the contention of the relator must be overruled.
 

 Writ denied.
 

 Mat¡.rttat,Ti; C. J., Day, Kinkadb, Robinson, Jones and Matthias, JJ., concur.