No. 31,753

THE PEOPLES TAXICAB COMPANY, *Appellee*, v. THE CITY OF WICHITA
et al., *Appellants*.

(34 P. 2d 545.)

Opinion filed July 7, 1934.

*Vincent F. Hiebsch, K. W. Pringle* and *Glenn Porter,* all of Wichita, for the appellants.

*C. A. Matson, I. H. Stearns* and *E. P. Villepigue,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action brought to enjoin the enforcement of an ordinance regulating the operation of taxicabs in Wichita. Judgment was for plaintiff. Defendant appeals.

The original ordinance was passed April 18, 1932. Its provisions in brief are as follows: It requires all taxicabs to be licensed; an application shall be made for the license, giving certain information as to the owner and operator of the cab, a description of the cab, together with other information as to its size and carrying capacity. The company shall carry personal liability insurance of not less

than $10,000 for injury or death to one person and $20,000 for injury or death to more than one person, and $2,000 property damage for each cab, or in lieu thereof, a bond, and a license shall be issued for each cab which is to be kept in the cab, which license is not transferable. The ordinance further provides for certain specifications as to advertising on the outside of the cabs, cards with rates posted on the inside of the cab, and for certain safety devices; cabs are prohibited from carrying more persons than their seating capacity, and from allowing persons to ride in the front seat with the driver. A license fee of $25 per year is required, certain maximum rates are set, and the operator of the cab is required to give receipts to passengers. The ordinance further prohibits the taking of extra passengers after the first one engaging the cab, without the consent of the passengers; prohibits cruising; regulates taxicab stands and prohibits them from being established on certain streets where street car or bus service is furnished. The use of solicitors on the sidewalks is prohibited, and furthermore, it is provided that where the driver operates a cab while under the influence of intoxicating liquor the license shall be forfeited. It provides penalties for the violation of its terms. This ordinance is referred to in the briefs as ordinance No. 11-180.

On May 16, 1932, an ordinance was passed amending the section providing for the carrying of insurance or bonds to protect the public. The section prohibiting taxicab stands to be established on street car or bus line was also clarified. This ordinance is referred to as No. 11-189. On December 17, 1932, the original ordinance was amended by a section which permitted either the insurance or a bond, or $5,000 deposited with the city treasurer and a $35,000 bond signed by the taxicab company itself. This ordinance is referred to as No. 11-252. On the 26th of December, 1932, the ordinance was again amended by the section raising the license fee from $25 to $60 a year.

This action was then instituted. It attacks the validity of all the provisions of all the ordinances on the following grounds:

"(a) Because said ordinance is not an exercise of a valid police power of said city and is calculated to and attempts to and does deprive this said plaintiff and its employees of their personal rights and liberties.

"(b) That the board of commissioners of the city of Wichita, Kansas, have no power, right or authority to pass said ordinances and that same is *ultra vires* and void; that the provisions of said ordinances are not necessary for the protection of the traveling public in person and property.

"(c) That the provisions of said ordinances are not needful police regulations and are not necessary for the preservation of good order and the peace of the said city of Wichita, and are not necessary to prevent injury to or the destruction of or interference with public or private property.

"(d) That the provisions of said ordinances are not necessary for the protection of the health, good morals or welfare of the inhabitants of the city of Wichita.

"(e) That said ordinances, in their operation, are flagrantly oppressive, unreasonable, unjust and illegal, and therefore void.

"(f) That the people of the city of Wichita are entitled to have the service that is afforded by the plaintiff in the operation of its taxicabs for the transportation of persons from place to place in said city.

"(g) That said ordinances were passed by said city commissioners without first investigating and taking into consideration the rights of this plaintiff and its employees.

"(h) That said ordinances deprive this plaintiff and its employees and each and all of them of its and their property and liberty without due process of law and in violation of the constitution and the laws of the state of Kansas, and in violation of the constitution and laws of the United States and especially the fourteenth amendment thereof.

"(i) That said ordinances deny to this plaintiff and its employees the equal protection of the law in violation of the constitution and the laws of the state of Kansas, and in violation of the constitution and laws of the United States and especially the fourteenth amendment thereof."

On final hearing a temporary injunction was granted enjoining the enforcement of ordinance No. 11-180 or any amendment to it and each provision of all these ordinances.

It is from that order that this appeal is taken.

The defendant discusses the action under four heads, as follows:

"I. The plaintiff was not a proper party to attack the validity of the ordinances in question.

"II. The plaintiff, by operation under and accepting the benefits of ordinances numbers 11-180, 11-189 and 11-252, is estopped from denying their validity.

"III. The court erred in holding ordinances numbers 11-180 and 11-189 invalid.

"IV. The court erred in holding ordinances numbers 11-252 and 11-254 invalid."

We will consider the case under those headings.

A consideration of the first question will require a further statement of facts. The plaintiff owns no taxicabs. It is a corporation organized for profit and furnishes telephone and dispatch service to the owners of taxicabs. During 1932 it furnished licenses and insurance for a number of taxicabs, as required by the ordinance,

and made contracts with certain taxicab owners and drivers to use the name and telephone number of plaintiff on the taxicabs. All the taxicabs operated under the name of the plaintiff were owned by individuals, and the owners paid plaintiff the sum of $2.25 per day for the service rendered by the plaintiff during 1932. These taxicabs operated over all the streets of Wichita, twenty-four hours a day, and the owners of them derived their revenue from this operation. The individual cab owners are bound to pay plaintiff $2.25 a day regardless of the earnings of that particular cab.

The argument of defendant that plaintiff is not a proper party to attack the validity of these ordinances is based on the above facts. Defendant contends that plaintiff, furnishing only a service and not directly operating taxicabs, can be said to be bringing this action only for the benefit of the actual owners of the taxicabs. The argument is that the enforcement of the ordinance does not deprive the plaintiff of any property rights.

The ordinance provides that—

"No person and/or persons, whether acting as owner, principal, agent, employee, lessees, or licensee, shall operate, or permit to be operated, upon the streets of the city of Wichita, any taxicab without first having procured a license therefor, as hereinafter provided."

The relationship created by the arrangement between the taxicab owners and plaintiff, whereby the service noted is furnished the owners and the insurance is provided for the benefit of the public, is held to be sufficient to bring the plaintiff under the ordinance within the meaning of the above-quoted provision so as to give plaintiff the right to question its validity.

The argument of defendant that plaintiff, by operating under and accepting the benefits of ordinances 11-180, 11-189 and 11-252, is estopped from denying their validity requires a further statement of facts. The evidence showed that the plaintiff company was incorporated in February, 1932, and that sometime thereafter seven cabs were put into service. Ordinance No. 11-180 was passed in April, and the plaintiff company, or the drivers, took out licenses, and the insurance, as provided for in ordinance No. 11-180, was furnished. Ordinance No. 11-189 was then enacted in May, which slightly amended section 4, the insurance provision of the original ordinance, but did not change the amount of or requirement of the insurance policies which were continued in effect by the plaintiff. This ordinance also amended the provision relating to taxicab

stands. Ordinance No. 11-189 was amended as to its first section by ordinance No. 11-252 enacted in December, but the insurance policy provisions under which the plaintiff furnished insurance were not changed. It took out licenses, paid the license fees of $25 per cab, secured the insurance policies, and starting in with seven cabs and an invested capital of $100 to $150, built up its business until it had in operation fifty cabs, and increased its invested capital or its surplus to more than $1,000, and had increased its business seven-fold. During that time it paid to or owed to its officers, with the assets on hand to pay, nearly $5,000. It was at the time it filed the injunction suit operating fifty cabs, and received $2.25 per day for each cab being operated and secured a gross return of $112.50 per day.

The argument is that having operated under this ordinance and having secured these unusual benefits the plaintiff is estopped from attacking the validity of the ordinances. There are some persuasive authorities cited and relied on by defendant on this point.

In view, however, of the situation that exists in Wichita with reference to this ordinance, and since the plaintiff contends that the ordinance is invalid because improperly passed, we will not determine the question of estoppel, but will decide the action on its merits.

The defendant argues that the court erred in holding ordinances 11-180 and 11-189 invalid. The provisions of these two ordinances will be considered irrespective of the sections that have been amended by the enactment of ordinances 11-252 and 11-254, the latter being the sections that relate to the amount of license fees to be paid, the insurance required and the maintenance of taxicab stands.

The remaining sections of 11-180 and 11-189 come within the well-established power of a municipality to regulate taxicabs and the operation of vehicles for hire upon the streets. (See R. S. 13-910; also, R. S. 13-413.)

In McQuillin on Municipal Corporations (2 ed.), § 993, it is said:

"Motor vehicles, auto-buses, or jitneys run for hire are clearly within the range of necessary, appropriate and reasonable police regulations, and this, of course, is true of taxicabs so common in all cities and towns. Automobile regulations may be made applicable to them in whole or in part, or they may be regulated as a distinct class, and their routes and hours of service may be prescribed."

See, also, *Desser v. City of Wichita,* 96 Kan. 820, 153 Pac. 1194, and *Decker v. City of Wichita,* 109 Kan. 796, 202 Pac. 89. Indeed, except for the argument that the entire ordinance was illegally passed, which will be noticed presently, the plaintiff does not seriously contend that ordinances 11-180 and 11-189 are invalid.

The defendant argues that the court erred in holding that ordinances 11-252 and 11-254 are invalid. Ordinance No. 11-252 requires an insurance policy with $10,000 of liability to one passenger, or in lieu thereof a bond of $35,000 with good and sufficient sureties to be furnished by the operator of the taxicab for all cabs, or $5,000 in cash or good bonds, and a $35,000 bond signed by the company alone. Ordinance No. 11-254 provides for a $60-a-year license fee.

The taxicabs in question are operated in most cases by men whose means are limited and whose financial responsibility is negligible. The hazard of people riding in a taxicab in the traffic of a busy city is greater than that of one riding on a country road. It is within the power of a city to require one using the streets of the city for the business of carrying passengers for hire in taxicabs to provide indemnity or a bond against injury to persons or property occasioned by the negligent operation of taxicabs. (See McQuillin on Municipal Corporations, 2d ed., § 993.) In the case of *People v. Martin,* 197 N. Y. Supp. 28, the indemnity bond referred to was only $2,500, but contained a continuing liability clause. The court held:

"Evidence that to comply with highway law, section 282-b for each taxicab operated, owner would have to secure a bond which stock companies issued for a premium of $960 and mutual companies for a premium of $300 plus a deposit of $250, or owner would have to give a personal bond with approved sureties, *held* not to show that this act was confiscatory.

"The fact that a police regulation may entail expense on property owners greater than they think they can temporarily stand will not invalidate it."

To the same effect is the holding of the court in *Hester v. Arkansas Railroad Commission,* 172 Ark. 90. (See, also, *State v. Deckebach,* 117 Ohio St. 227; *Williams v. Denney,* 151 Wash. 630; *Smallwood v. Jeter,* 42 Ida. 169, and *Jitney Bus Ass'n v. Wilkes-Barre,* 256 Pa. St. 462.)

These authorities all sustain the power of the city to require those operating taxicabs to carry liability insurance. We are unable to say that the amount of insurance required to be carried is so unreasonable and oppressive as to render the ordinance void. The fact alone that the plaintiff will be unable to furnish the insurance required is not sufficient to render the requirement unreasonable.

Defendant argues that the section increasing the license fee from $25 a year to $60 a year is not so unreasonable as to render the section invalid. The first question to be considered is, Is the license tax imposed so excessive as to show on its face that it does not bear some relationship to the cost of enforcing the ordinance? On this question plaintiff relies on a finding of fact made by the court as follows:

"That the enforcement of said taxicab ordinance during the year 1932 did not take the time of the various departments of the city to such degree and amount and expense as to justify the amount of license tax or regulation tax provided in the ordinance. . . . That the license fee, or fee charged by the city for cab, of $60 per year per cab is excessive, and in excess of the amount needed to regulate the taxicabs under the city ordinance, and that the insurance requirement of from ten thousand to twenty thousand dollars for personal injuries is excessive."

It argues that these findings end the matter.

The question of the validity of the ordinance cannot be settled on so narrow a ground, however. It must be remembered that the plaintiff is claiming a right to use the streets of the city for the purpose of operating taxicabs on it for hire. It has no inherent right to so use the streets. In *Hadfield v. Lundin,* 98 Wash. 657, the court held:

"As to the rights of citizens to use the streets in the ordinary way, the legislative power is confined to regulation, while as to the use of the streets for business for private gain, the power is plenary and extends to absolute prohibition." (168 Pac. 516, headnote 2.)

See, also, *Star Trans. Co. v. Mason City,* 195 Ia. 930. This court has considered this question. In the case of *Desser v. City of Wichita,* supra, and *Decker v. City of Wichita,* supra, this court considered an ordinance that fixed a license fee of $300 and $400 on jitney buses. The opinion in the Desser case quoted with approval *In re Martin,* 62 Kan. 638, 64 Pac. 43, that it had no case before it of finding that the license tax imposed was flagrant, unreasonable, unjust and oppressive so that the court might properly intervene. The court used language in these two cases which is highly persuasive in this case. In the Desser case it said:

"The presumption of good intention must be accorded the city in passing the ordinance. The same rules of construction apply as to a statute, and, unless clearly void, the enactment must be upheld." (p. 821.)

Also:

"Whatever natural right a citizen may have to traverse the streets of his

city with a motor vehicle for the conveyance of his family or his friends, no inherent right exists to devote his vehicle to the public use of carrying passengers for hire and to appropriate to himself the use of all streets for purposes of profit." (p. 824.)

In the Decker case this court quoted with approval the case of *Ex Parte M. T. Dickey*, 76 W. Va. 576, 85 S. E. 781, as follows:

" 'The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader, the right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities.' " (p. 798.)

Also:

"It was also held in the Desser case that whether the public welfare would be best subserved by extending privileges to the street railway company and withholding them from those operating jitneys, was a legislative and not a judicial question. It belonged to the city commission to determine the course which would best subserve the public interest, promote the convenience, safety and welfare of the traveling public, and would assure continued and adequate service. Interference by the court with the determination is not permissible even if it should think that the decision had not been wisely made. That would be an exercise of a legislative function and the substitution of the court's opinion for the discretion and judgment of the tribunal vested with such discretion and power." (p. 799.)

Again, in the Decker case it was said:

"It is argued that the provisions of the ordinance are more than regulatory and are in fact prohibitory in their character. It may be said that all regulation has prohibitive features, and for the convenience and protection of the public, restrictions of that kind may be imposed, and such restrictions are not inaptly termed regulations." (p. 800.)

Plaintiff argues that the Desser case and the Decker case are not in point here because they dealt with a so-called jitney ordinance regulating the operation of jitney buses, something altogether different from the operation of the taxicabs in this case. The cases are controlling, however, on the question of the power of the city to impose a license fee for the use of its streets, and for transportation over its streets, so high as to be in effect a prohibition against such use of the streets.

Plaintiff argues that ordinance 11-254 is void because it was illegally passed. It was passed within a period of three days and was read but once. Plaintiff relies on the provisions of R. S. 13-2801. That section is the one which gives to city commissioners right to permit companies engaged in furnishing natural gas, light and heat, electric light, power or heat, or steam heat to use the streets of the city. Paragraph 7 of the section provides:

"All contracts, grants, rights, privileges or franchises for the use of the streets and alleys of such city, not herein mentioned, shall be governed by all the provisions of this act, and all amendments, extensions or enlargements of any contract, right, privilege or franchise previously granted to any person, firm or corporation for the use of the streets and alleys of such city shall be subject to all the conditions herein provided for in this act for the making of original grants and franchises. . . ."

R. S. 13-2901 provides, in part, as follows:

". . . That no ordinance or resolution making a grant of any franchise or special privilege shall ever be passed as an emergency measure."

Plaintiff argues that the ordinance in question is the sort of ordinance that is contemplated by the above sections. The argument is not good. Those sections were passed to give cities the power to grant franchises to public utilities. The ordinance in question is a police regulation, and flows from an altogether different power which is conferred on cities to regulate the traffic on their streets.

This court, therefore, concludes that ordinances 11-180, 11-189, 11-252 and 11-254 are all valid ordinances and their enforcement should not be enjoined.

The judgment of the trial court is reversed with directions to dissolve the temporary injunction and dismiss the action.