## R. M. ANDERSON v. CITY OF DULUTH.

155 N. W. (2d) 281.

December 22, 1967—No. 40,637.

*Montague, Applequist, Lyons, Nolan, Donovan & Knetsch* and *Charles T. Barnes,* for appellant.

*Harold A. Frederick,* City Attorney, for respondent.

NELSON, JUSTICE.

Plaintiff appeals from a judgment of the District Court of St. Louis County.

The facts of this controversy as presented by a stipulation between the parties are as follows: The city council of the city of Duluth passed Ordinance No. 7486, amending the city housing code, on September 27, 1965. Petitions demanding a repeal of the ordinance or a vote by referendum were presented to the city clerk, who certified the adequacy of the petitions. Thereafter several affidavits challenging the sufficiency of the petitions were filed with the clerk, and the city council, without either repealing the ordinance or putting it to a vote, first undertook an investigation to determine whether the petitions had been properly and lawfully circulated. The transcript of the hearing for that purpose is also a part of the record, as are the conclusions of the city council that 13 of the petitions were invalid and that the remaining ones did not contain the 3,319 signatures required for submission of the ordinance to a referendum.

At that point, the city council on December 6, 1965, repealed Ordi-

nance No. 7486 and on the same date passed Ordinance No. 7502, which in every respect is identical to Ordinance No. 7486.

Petitions were again circulated and filed, bringing Ordinance No. 7502 to a vote which was held on April 5, 1966. At this election the ordinance was approved by the voters of the city of Duluth.

Before the petitions relating to Ordinance No. 7502 were filed with the clerk, plaintiff commenced this action to obtain a declaratory judgment holding Ordinance No. 7502 invalid and unlawful. Plaintiff is the owner of a 25-unit, 3-story apartment building, known as the San Marco Apartments and located at 224 West 3rd Street, Duluth, which does not conform to the minimum standards for housing established by Ordinance No. 7502. No evidence was presented to the court below showing, or tending to show, that plaintiff was in any way prejudiced as the result of the fact that Ordinance No. 7502 rather than Ordinance No. 7486 was submitted to a vote of the people.

The district court found that Ordinance No. 7502 was legal, valid, and constitutional. Plaintiff contends that he is entitled to a reversal of that determination because defendant, "through its council, had no power or right to pass an identical ordinance to one which had already been stopped or blocked by petition of the voters of Duluth." This is plaintiff's sole contention.

Defendant operates under a home rule charter adopted in 1912 and amended thereafter from time to time. The charter, as amended, provides for the mayor-council form of government. The mayor is given broad executive powers and the nine-member council is a part-time body required by the charter to meet twice each month. Section 8 provides that, with certain exceptions not applicable here, all legislation must be by ordinance.

Section 52 provides in part:

"No ordinance passed by the Council shall go into effect before thirty (30) days from the time of its last publication, except when otherwise required by the general laws of the State or by provisions of this charter.

"If, during said thirty (30) days a petition, signed by qualified electors of the City equal in number to at least ten (10) per cent of the

total ballots cast at the last preceding general municipal election protesting against the passage of such ordinance, be presented to the Council, the same shall thereupon be suspended from going into operation; and it shall be the duty of the Council to reconsider such ordinance, and if the same be not entirely repealed, the Council shall submit the ordinance, as provided in Section 51 of this charter, to a vote of the electors of the City, either at the next general municipal election, or at a special election called for that purpose, and such ordinance shall not become operative unless a majority of the qualified electors voting on the same shall vote in favor thereof. The provisions of Sections 50 and 51 of this charter, respecting the forms and conditions of the petition, and the mode of verification, certification and filing shall be substantially followed, with such modifications as the nature of the case requires."

Section 50 sets out the basic requirements with regard to petitions generally, and provides in part:

"* * * The signatures to the petition need not all be appended to one paper, but each signer shall state his place of residence and street number. One of the signers of each such paper shall make oath that the statements therein made are true, as he believes and that each signature to the paper appended is the genuine signature of the person whose signature [it] purports to be.

"Within ten days from the date of filing such petition, the Clerk shall ascertain from the voters register whether or not said petition is signed by the requisite number of qualified electors. The Clerk shall attach to said petition his certificate, showing the result of said examination."

■ In Aad Temple Bldg. Assn. v. City of Duluth, 135 Minn. 221, 226, 160 N. W. 682, 684, this court discussed the nature of the referendum privilege under § 52 of the Duluth City Charter, saying:

"* * * The right to suspend, and possibly to revoke, as given by the referendum, (section 52), is an extraordinary power which ought not unreasonably to be restricted or enlarged by construction. It must be confined within the reasonable limits fixed by the charter. The

charter prescribes what the petition for referendum shall contain, how it shall be signed, and by whom it shall be verified. These provisions are intended to guard the integrity both of the proceedings and of the petition. Where a power so great as the suspension of an ordinance or of a law is vested in a minority, the safeguards provided by law against its irregular or fraudulent exercise should be carefully maintained.

\* \* \* \* \*

"\* \* \* The verification by one of the signers is the only safeguard provided by the charter to guard the integrity of the petition and to identify and verify the signatures attached thereto. The clerk's examination and certificate are based upon a petition filed and sworn to according to law. He has no other guide and no other means of deciding whether the sections of the petition are genuine or not."

It is clear from this last quoted portion that, although the clerk certifies that there are sufficient names on the petitions filed, he does not certify that the names are in fact signed by the persons whom they purport to represent. The only means provided for verification is that "[o]ne of the signers of each such paper shall make oath \* \* \* that each signature to the paper appended is the genuine signature of the person whose signature it purports to be."

■ In Jefferson Highway Transp. Co. v. City of St. Cloud, 155 Minn. 463, 193 N. W. 960, this court discussed the verification of a referendum petition under the St. Cloud City Charter. Like Duluth's charter, the St. Cloud charter does not require the city clerk to certify that the names on the petition were signed by the persons whom they purport to represent. The court stated (155 Minn. 465, 193 N. W. 961):

"\* \* \* If, when presented to the council for consideration, it is made to appear that some signers were not electors, or that the required affidavit was false or lacking in statement of facts, or that persons who thoughtlessly or by misrepresentation became petitioners had filed proper withdrawals, it became the duty of the council to eliminate all improper signatures and then ascertain the sufficiency of the petition."

The St. Cloud case makes it clear that the city council has the power and duty to determine if the signatures on the petition are valid where,

as in the instant case, the signatures were challenged by affidavit. This is precisely what defendant's city council did and, as a result of its hearing on the sufficiency and validity of the petitions relating to Ordinance No. 7486, found certain of the petitions invalid, which reduced the number of signers to a figure below the 10-percent requirement of § 52. Thereupon, defendant's city council repealed that ordinance and adopted Ordinance No. 7502, which was identical to Ordinance No. 7486.

▪ It appears that the city council repealed and reenacted the ordinance, not with a view to defeating the referendum provisions contained in § 52 of the charter, but instead to provide the electorate with the opportunity of properly circulating a petition pursuant to that section. After the council adopted the second ordinance (No. 7502), a sufficient protest petition was presented to the council, and the council, pursuant to § 52, declared the petition sufficient and called for a referendum election on Ordinance No. 7502. Thus, the voters of defendant at an election duly called and duly conducted approved that ordinance by a vote of 15,954 cast in the affirmative and 13,286 votes cast in the negative.

Plaintiff contends that under the authority of State ex rel. Megnella v. Meining, 133 Minn. 98, 157 N. W. 991, the city council could not proceed as it did in this case and the reenacted ordinance, that is, Ordinance No. 7502, was a nullity. In Megnella this court discussed the language of § 52 of defendant's charter, as above set out, and said in passing that, assuming a *sufficient* referendum petition had been presented to the council (133 Minn. 99, 157 N. W. 992):

"* * * The council could repeal [such ordinance], and did so on September 13. We think it is correct that the council could not then give life to the dead ordinance by passing it over again, or by passing an ordinance in all essential features like the one against which the petition protested. This would plainly be to nullify the referendum provisions of the charter."

Here we cannot assume that the petitions relating to Ordinance No. 7486 were sufficient in view of the council's determination to the contrary. Thus, this dictum intimating that the council could not reenact

an ordinance repealed after filing of a sufficient referendum petition is not applicable to this case.

Certain facts are present in the case at bar which were not present in Megnella. It is important to note that the court in the Megnella case also said (133 Minn. 99, 157 N. W. 992):

"* * * It [the council] doubtless may, if it acts in good faith and with no intent to evade the effect of the referendum petition, pass an ordinance covering the same subject matter that is essentially different from the ordinance protested against * * *."

Defendant contends, as it did before the court below, that the good faith discussed by this court in Megnella was present here when the council repealed and reenacted the ordinance; that the council selected the method pursued because it was interested in assuring that protest petitions were circulated based upon the true facts and in a proper fashion; and that the council had no interest in evading the referendum procedure of the charter. Proof of the good faith of the council, defendant contends, is furnished by the statement of Councilman McDonnell in his report to the mayor and the council on the outcome of the investigation. In this report he pointed out that by repealing and reenacting the ordinance, "the council will give persons who have true and valid objections to these amendments another opportunity to solicit petitions, to do it legally and properly with truth and with arguments without falsehood, intimidation or playing upon emotions and trying to strike fear in the hearts of homeowners."

The true test of Megnella, we think, is set out in the recent decision of this court in G.E.M. of St. Louis, Inc. v. City of Bloomington, 274 Minn. 471, 474, 144 N. W. (2d) 552, 555, where this court said:

"The power of the municipal corporation acting pursuant to its charter to submit the ordinance here involved to the voters in response to an initiative petition was not affected by the council's repeal of the ordinances previously enacted by it. There was no attempt here to nullify provisions of a municipal charter by council action—a procedure disparaged by dictum in Megnella v. Meining, 133 Minn. 98, 157 N. W. 991."

Clearly then the Megnella test is, did the council in good faith repeal Ordinance No. 7486 and enact Ordinance No. 7502? The trial court made the following finding:

"That the City Council of the City of Duluth, in repealing Ordinance No. 7486 and in enacting Ordinance No. 7502, did so in good faith and without intending to defeat the referendum provisions of Section 52 of the City Charter."

The record sustains this finding. Under these facts the council's power to enact Ordinance No. 7502, and to submit it to referendum following the filing of sufficient petitions therefor, was not affected by the fact it had repealed the previously enacted ordinance (No. 7486) containing the same provisions as Ordinance No. 7502.

The trial court also found:

"That the plaintiff has failed to present any evidence showing or tending to show that he was in any way prejudiced as a result of the fact that Ordinance No. 7502 was submitted to a vote of the people, rather than Ordinance No. 7486, both ordinances being in every respect identical."

The trial court in its memorandum stated:

"The Court is of the opinion that where the City Council of the City of Duluth, acting in good faith, when confronted with a petition for referendum, repealed the ordinance against which the petition was filed and enacted a new, but identical ordinance, which second ordinance was submitted to a vote of the people and duly approved and where plaintiff was among those who joined in the protest petition against both ordinances, and fails to establish that he was in any way prejudiced by failure of the Council to submit the first ordinance to a referendum vote, then the second ordinance as approved by a vote of the people, is valid, lawful and binding."

We reach the conclusion that the record presented on this appeal sustains the findings of the district court and that its decision should be affirmed.

Affirmed.